**THE KOZUB LAW GROUP, PLC**
William A. Kozub, # 014826
Richard Hundley, # 019829
7537 East McDonald Drive
Scottsdale, Arizona 85250
mewak@kozublaw.com
Telephone: (480) 624-2700

Attorneys for Defendants Higher Connection, LLC; Higher Connection 3PL LLC; and Higher Connection LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Ignite International, Ltd., a Wyoming corporation, | Case No. 2:2021-cv-02184 |
| Plaintiff, | **MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS ZACHARIA JAMES GLEASON and MIRZA BAIG** |
| vs. | |
| Higher Connection LLC, a Utah limited liability company; Zachariah James Gleason; Mirza Baig; Higher Connection 3PL LLC, an Arizona limited liability company; and Higher Connection, LLC, an Arizona limited liability company; | (Assigned to the Honorable Michael T. Luburdi) |
| Defendants. | **Oral Argument Requested** |
| Higher Connection LLC, a Utah limited liability company, | |
| Counterclaimant, | |
| vs. | |
| Ignite International, Ltd., a Wyoming corporation; | |
| Counterdefendant. | |

-1-

Defendant Zachariah James Gleason ("Gleason") and Defendant Mirza Baig ("Baig"), by and through their undersigned attorneys, hereby move this Court for partial summary judgment on all claims against Gleason and Baig only.  This motion is supported by the Declaration of Mirza Baig (the "*Baig Dec.*") attached hereto as **Exhibit A** and the Declaration of Zachariah James Gleason (the "*Gleason Dec.*") attached hereto as **Exhibit B**, and the exhibits attached to each such declaration.

## I.       Overview of Lawsuit and Parties.

This action involves an accounting dispute about the amounts owed for products delivered by Plaintiff to Defendant Higher Connection, LLC, a Utah limited liability company (hereinafter "Higher Connection"). *See Complaint, Docket Document #1.* Defendant Higher Connection provided warehousing, pick & pack and shipping services to Plaintiff pursuant to the written warehousing and packing agreement that is the contract at issue in this matter (hereinafter the "Fulfillment Agreement"). *Baig Dec., ¶ 6; Gleason Dec., ¶ 6. A copy of the Fulfillment Agreement is attached to the Baig Dec. and the Gleason Dec. as Exhibit 1 and to the Complaint at Exhibit 1.* The two parties to the Fulfillment Agreement are Plaintiff and Higher Connection. *Baig Dec., ¶ 7; Gleason Dec., ¶ 7.*

Plaintiff has also sued the two individual principals of Higher Connection on multiple theories including piercing the corporate veil. Defendant Zachariah James Gleason ("Gleason") and Defendant Mirza Baig ("Baig") are the two members of Higher Connection (*Baig Dec., ¶ 3; Gleason Dec., ¶ 3)*, and are named as defendants in each cause of action set forth in the Complaint (*Baig Dec., ¶ 2; Gleason Dec., ¶ 2)*. No specific allegations are made in the Complaint against Gleason or Baig. *See Complaint, Docket Document #1.* Gleason executed the Fulfillment Agreement as the president of Higher Connection. (*Baig Dec., ¶ 9; Gleason Dec., ¶ 9).* Baig is not named in the Fulfillment Agreement. (*Baig Dec., ¶ 10; Gleason Dec., ¶ 10).* Gleason and Baig hereby move for

summary judgment as to their liability only.

Finally, Plaintiff has also sued two entities called Defendant Higher Connection 3PL, LLC, an Arizona limited liability company, and Defendant Higher Connection, LLC, an Arizona limited liability company, both of which are inactive entities that never commenced any business operations. (*Baig Dec., ¶ 5; Gleason Dec., ¶ 5)*. Neither entity was a party to or named in the Fulfillment Agreement. Neither party is involved in this Motion for Summary Judgment.

## II.    Plaintiff's Complaint.

Plaintiff's Complaint alleges ten causes of action. These ten causes of action are Breach of Contract (Count I), Breach of the Covenant of Good Faith and Fair Dealing (Count II), Tortious Interference with a Business Relationship (Count III), Misappropriation (Count IV), Unfair Competition (Count V), Conversion (Count VI), Breach of Fiduciary Duty (Count VII), Unjust Enrichment (Count VIII), Civil Conspiracy (Count IX), and Piercing the Corporate Veil (Count X). Gleason and Baig hereby move for summary judgment on an individual basis on each count in the Plaintiff's Complaint.

## III.   Arizona law provides statutory protections for members and managers of an LLC from a claim of veil piercing and therefore Gleason and Baig are entitled to summary judgment on the issue of piercing the veil as alleged in Count X.

Plaintiff does not have a valid claim against Gleason and Baig as members of Higher Connection for piercing the veil of Higher Connection. Arizona law expressly provides a broad and impervious liability shield to members and managers of limited liability companies. A.R.S. § 29-3304 provides as follows:

> A.    A debt, obligation or other liability of a limited liability company is solely the debt, obligation or other liability of the company. A member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation or other liability of the company or for the acts or omissions of any other member, manager, agent or employee of the company, solely by reason of being or acting as a member or manager. This subsection applies regardless of the dissolution of the company.

> B.    The failure of a limited liability company to observe formalities relating to the exercise of its powers or management of its activities and affairs is not a ground for imposing liability on a member or manager for a debt, obligation or other liability of the company.

With this statute, Arizona law makes clear that this statutory liability shield protects a company's members and managers against the company's obligations and liabilities. In other words, the members and managers are not vicariously liable for the company's obligations and liabilities. In addition, the statute makes clear that even if the formalities of organization are not followed, the members and managers still have no liability. Pursuant to A.R.S. § 29-3304, Arizona has abrogated the common law "piercing the veil" doctrine as it relates to limited liability companies.

A.R.S. § 29-3304 is based on ULLCA § 304(b). The notes of the ULLCA provide insight into the statutes meaning. *See ULLCA § 304, Comment, Subsection (a), first paragraph* (this provision provides a shield protecting "against a member's or manager's alleged vicarious liability for the obligations of the entity."). The shield applies regardless of the nature of the claimant, whether it be a creditor of the company for money borrowed, a member's claim that the company has not complied with the operating agreement, or a former member's claim that the company breached a repurchase agreement. *See ULLCA § 304, Comment, Subsection (a), second paragraph.* Thus, both the express law of Arizona, as well as the comments to the ULLCA that forms the basis of Arizona's law, expressly provide that the so-called common law "piercing the veil" doctrine does not apply to a limited liability company in Arizona.

On September 1, 2019, Arizona adopted new statutory provisions governing limited liability companies with the new protections provided in A.R.S. § 29-3304. Arizona's prior law governing limited liability company did not contain language similar to the language now found at A.R.S. § 29-3304. However, during the duration of the prior Arizona law state and federal court decisions in Arizona dealing with Arizona or foreign limited liability companies did not permit veil-piercing to be applied to limited liability companies.

In refusing to pierce the veil of an entity, an Arizona bankruptcy court opinion quoted a contract purporting to have as a party a "family limited liability company," but the named entity appears in the Arizona Corporation Commission records only as an Arizona corporation, with no record of any limited liability company ever having had that name, and the court's opinion referred to the veil-piercing argument as an attempt to circumvent the protections "accorded shareholders, directors, and officers by the corporate form." *In re Sanner*, 218 B.R. 941, 32 Bankr. Ct. Dec. (CRR) 359 (Bankr. D. Ariz. 1998) (refusing to pierce the veil of an entity, court applied Arizona veil-piercing cases in determining that the entity's founder was not liable under an alter-ego theory and stated that the veil-piercing argument was "merely an attempt to make an end run around the protections accorded shareholders, directors, and officers by the corporate form and is not supported by any credible evidence.").

In an unpublished decision, after acknowledging that there was no Arizona precedent for applying veil-piercing to limited liability companies, but feeling constrained by the parties' and the lower court's having assumed that a veil-piercing analysis could be applied to a limited liability company and by the appellants' failure to raise on appeal that as a matter of law veil-piercing did not apply, the Arizona Court of Appeals affirmed a judgment against the owners of a limited liability company—but could not resist noting that none of the parties had bothered to cite any relevant provision of the prior Arizona limited liability company act. *All Custom Exteriors, Inc. v. Bilyea*, 2011 WL 5964528 (Ariz. Ct. App. Div. 1 2011) (appellate court stated that "it has not been explicitly determined under Arizona law whether a party may pierce the [LLC] veil," but observed that the lower court and all the parties, including an Arizona limited liability company, apparently acquiesced to the applicability of the veil-piercing doctrine ["Both the parties and the trial court approached this issue as identical or analogous to piercing the corporate veil, and the Bilyeas do not argue on appeal that the 'L.L.C. veil' cannot, as a matter of law, be pierced. Accordingly, we will assume for purposes of this case that the same case

law and principles that apply to piercing a traditional corporate veil also apply here."]—and the court was apparently dissatisfied with having to approach the issue in that manner, noting, "We have found nothing in this record indicating that any party has cited the appropriate statutes governing limited liability companies.").

In refusing to pierce the veil of two Arizona limited liability companies, a federal district court in California applied California law for its analysis and did not analyze any Arizona law on the topic of veil-piercing. *Butler v. Adoption Media*, LLC, 486 F. Supp. 2d 1022 (N.D. Cal. 2007) (applying California law to analysis of attempted veil-piercing of two Arizona limited liability companies, court refused to pierce the veil and granted summary judgment).

All of these decisions were only strengthened with the passage of A.R.S. § 29-3304.

Finally, while not specifically addressing the piercing the veil concept, the law in Arizona is very clear that an agent is not personally liable for the acts of their fully disclosed principal:

> **One who signs an agreement as the agent of a fully disclosed principal is not a party to that agreement and thus incurs no personal liability for the principal's breach of that agreement.** *Geyer v. Huntingdon County Agricultural Association*, 362 Pa. 74, 66 A.2d 249 (1949); Restatement (Second) of Agency Sec. 320 (1958); 3 C.J.S. Agency s 215 (1936); 3 Fletcher, Cyclopedia of the Law of Private Corporations Sections 1117-1118 (Perm. ed. 1965).
>
> ***
>
> Plaintiffs, in attempting to hold defendant Kramer personally liable, again seek to impose responsibility upon an individual for an alleged corporate wrong. **It is clear, however, that defendant Kramer, either as an officer or director cannot be held liable on the contracts of R.I.C., Inc., where, as here, there is no evidence that he undertook to bind himself individually on those contracts.** *Watkins v. Cotton*, 180 Okl. 73, 67 P.2d 957 (1937); *S & H Concrete Construction Co. v. Genova*, 384 S.W.2d 816 (Mo.App.1964); Cf. *Jolles v. Holiday Builders, Inc.*, 222 Ga. 358, 149 S.E.2d 814 (1966). (Emphasis added)

*Ferrarell v. Robinson*, 11 Ariz.App. 473, 475 (App. 1970); *McMahon v. Fiberglass Fabricators, Inc.*, 17 Ariz.App. 190, 192 (App. 1972).

There is simply no legal basis to pierce the veil of Higher Connection and assert personal liability on Gleason and Baig, and no triable issue of facts exists that would prevent this Court from granting summary judgment on the cause of action to pierce the veil of Higher Connection in favor of Gleason and Baig.

It should be noted that the State of Utah has adopted the identical language found at A.R.S. § 29-3304 at Utah Code §48-3a-304 and thus the analysis also controls this matter from the perspective of Utah law.

**IV.    Higher Connection followed all formalities relating to the exercise of its LLC powers and the management of its business activities and affairs.**

Arizona law is clear that the failure to follow formalities relating to the exercise of an LLC's powers and the management of its business activities does not give rise to a claim for veil-piercing. A.R.S. § 29-3304(B). However, in the case now before this Court Higher Connection did follow formalities relating to the exercise of an LLC's powers and the management of its business activities. (*Baig Dec., ¶ 13; Gleason Dec., ¶ 13*)

Higher Connection maintained a management structure at all times and all business decisions were conducted in accord with this management structure. (*Baig Dec., ¶ 13; Gleason Dec., ¶ 13)*. Higher Connection maintained a business bank account and did not commingle money in that account with the personal funds of the members and managers of the company, other employees of the company or other companies. (*Baig Dec., ¶¶ 14, 15, and 16; Gleason Dec., ¶¶ 14, 15, and 16)*. Higher Connection employed many employees since its original organization and has paid payroll on the W-2 employees and issued 1099's to the independent contractors on behalf of its employees and contractors. (*Baig Dec., ¶ 15; Gleason Dec., ¶ 15)*. All monies received by Gleason and Baig are subject to either a W-2 or a 1099 and are fully accounted for. (*Baig Dec., ¶ 17; Gleason Dec., ¶ 17)*.

Higher Connection was properly capitalized upon its original organization. (*Baig Dec., ¶ 12; Gleason Dec., ¶ 12)*. The current lawsuit and associated financial dispute is

irrelevant to the issue of whether the company was properly capitalized. In *Norris Chemical Co., v. Ingram*, 139 Ariz. 544, 679 P.2d 567 (App. 1984), decided prior to the enactment of A.R.S. § 29-3304, the Arizona Court confirmed that if a corporation is adequately capitalized at the time of its formation, but later suffers financial reverses, undercapitalization to support a claim of alter ego does not exist. Id., at 548. The *Norris* Court specifically held that mere insolvency at some point in a company's existence does not prove undercapitalization. Id. Without admitting insolvency, the mere fact that there is a financial dispute about how much is owed pursuant to the Fulfillment Agreement does not mean Higher Connecton was undercapitalized at its formation. The Norris decision is controlling in this matter and regardless of what is owed now, it is not evidence of undercapitalization for purposes of piercing the veil.

There is no triable issue of fact concerning the formalities of Higher Connection that would prevent this Court from granting summary judgment to Gleason and Baig on Count X of the Complaint.

**V.    Gleason and Baig are not Parties to the Fulfillment Agreement and are entitled to summary judgment on the breach of contract and breach of the covenant of good faith and fair dealing causes of action (Counts I and II).**

Plaintiff does not have a valid claim against Gleason and Baig for breach of contract (Count I) or breach of the covenant of good faith and fair dealing (Count II) because neither Gleason nor Baig were ever parties to a contract with the Plaintiff. (*Baig Dec., ¶¶ 6, 7, 8, 9 and 10; Gleason Dec., ¶¶ 6, 7, 8 and 10).* The only contract involved in this lawsuit is the Fulfillment Agreement. The Fulfillment Agreement is a written agreement that expressly identified the parties as the Plaintiff and Higher Connection. (*Baig Dec., ¶¶ 6, 7, 8, 9 and 10; Gleason Dec., ¶¶ 6, 7, 8 and 10).* Neither Gleason nor Baig entered into any contract with the Plaintiff. (*Baig Dec., ¶ 10; Gleason Dec., ¶¶ 8 and 9).* Rather, Gleason executed the Fulfillment Agreement as the president of Higher Connection and Baig

neither executed the Fulfillment Agreement or is mentioned in the Fulfillment Agreement. *¶¶ 6, 7, 8, 9 and 10; Gleason Dec., ¶¶ 6, 7, 8 and 10*

The Arizona legal authority cited above of A.R.S. § 29-3304, *Ferrarell v. Robinson*, 11 Ariz.App. 473, 475 (App. 1970), and *McMahon v. Fiberglass Fabricators, Inc.*, 17 Ariz.App. 190, 192 (App. 1972) all stand for the proposition that the members and managers of a limited liability company are not liable for the debts of the company.

Based upon the legal concepts set forth in the previous paragraph, and the fact that neither Gleason nor Baig are parties to any contract with the Plaintiff, there is no triable issue of fact that would prevent this Court from granting summary judgment on the cause of action for breach of contract in favor of Gleason and Baig.

The doctrine of breach of the covenant of good faith and fair dealing arises from contract absent a special relationship. *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz 474, 38 P.3d 12 (2002). The Fulfillment Agreement expressly sets forth the relationship of the parties is merely a contractual relationship and that no special relationship exists. Section 9 of the Fulfillment Agreement reads as follows:

> HC is an independent contractor and is not an agent or employee of Ignite. Nothing in this Agreement shall be construed to create an employer/employee, principal/agent, joint venture, partnership, or other relationship between HC and Ignite, other than the contractual relationship set forth herein. None of HC's employees shall be considered to be employees or agents of Ignite. HC shall be solely responsible for hiring, compensating, providing benefits to, and terminating all employees and independent contractors in connection with the operation of the Warehouse, in accordance with all applicable laws, statutes, rules, and regulations.

Because the relationship between Plaintiff and Higher Connection is purely contractual, and because neither Gleason nor Baig are parties to any contract with the Plaintiff, there is no triable issue of fact that would prevent this Court from granting summary judgment on the cause of action for breach of the covenant of good faith and fair dealing in favor of Gleason and Baig.

**VI.    Neither Gleason nor Baig owed a fiduciary duty to Plaintiff.**

Neither Gleason nor Baig owe the Plaintiff a fiduciary duty and thus summary judgment in their favor on the claim is appropriate. *Baig Dec. ¶ 18; Gleason Dec., ¶ 18.* The existence of a fiduciary relationship and the accompanying fiduciary duty is generally dependent on the particular circumstances governing the relationship between the parties. *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6 24 (App. 1996). Trust in another's competence or integrity does not by itself establish a fiduciary duty. *Id.* A fiduciary relationship will only arise when the trusting party's secrets or power are entrusted to the fiduciary and requires that the fiduciary act for the benefit of the trust party. *Id.*

In this case before this Court there is no triable issue of act as to the existence of a fiduciary relationship. The relationship of the Plaintiff and Higher Connection is set forth in Section 9 of the Fulfillment Agreement that is cited in its entirety above. Section 9 makes clear that there is no special relationship between the parties, much less the members and managers of the parties. Indeed, the language of Section 9 expressly provides the parties do not have a "joint venture" or a  "partnership relationship."  Most significantly, Section 9 expressly disavows any "principal/agent" relationship. In other words, the Fulfillment Agreement specifically disclaims any fiduciary duty, instead describing the relationship of the parties as purely a "contractual relationship" to perform the terms of the written Fulfillment Agreement.

In addition, neither Baig or Gleason were ever entrusted with business secrets or any management over the affairs of the Plaintiff. *Baig Dec. ¶ 19; Gleason Dec., ¶ 19.*

Because the Fulfillment Agreement specifically disavows the existence of a fiduciary relationship (*Baig Dec. ¶ 20; Gleason Dec., ¶ 20),* there is no triable issue of fact that could give rise to a fiduciary duty being owed to the Plaintiff by the members and manager of Higher Connection. For this reason summary judgment in favor of Gleason and Baig on the claim of breach of fiduciary duty is appropriate.

-10-

**VI.    There has been no misappropriation of trade secrets by Gleason or Baig and neither of them engaged in unfair competition.**

Plaintiff has sued Gleason and Baig for misappropriation of trade secrets of Plaintiff. Gleason and Baig have never received any trade secrets of the Plaintiff and have never misappropriated any trade secrets of the Plaintiff. *Baig Dec.* ¶¶ *21 and 22; Gleason Dec., ¶¶ 21 and 22.* For this reason, Gleason and Baig are entitled to summary judgment on the misappropriation cause of action.

Plaintiff has also sued Gleason and Baig for unfair competition arising from the alleged use of the Plaintiff's trade secrets.  The universal test for unfair competition is whether the public was confused by the use of trade secrets by Gleason and Baig. *Skydive Arizona, Inc., v. Hogue*, 238 Ariz. 357, ¶ 34, 360 P.3d 153 (App. 2015). There is no confusion in the industry or public concerning the difference between the Plaintiff's products and the distribution services provided by the Higher Connection. *Baig Dec.* ¶ *23; Gleason Dec., ¶ 23.* Indeed, following the execution of the Fulfillment Agreement, Higher Connection ceased all manufacture of any products of a similar nature to those manufactured by the Plaintiff and Higher Connection resumed such business. *Baig Dec. ¶ 24; Gleason Dec., ¶ 24.* Because neither Gleason or Baig used any trade secrets of the Plaintiff in any manner, there was no unfair competition by Gleason or Baig.

**VII.    There has been no unjust enrichment of Gleason or Baig.**

Plaintiff has sued Gleason and Baig for unjust enrichment. Gleason and Baig have not been unjustly enriched at the expense of the Plaintiff.

To maintain a claim for unjust enrichment, the Plaintiff must prove 1) an enrichment to defendants Gleason and Baig, 2) an impoverishment of Plaintiff, 3) a connection between the enrichment and impoverishment, 4) the absence of justification for the enrichment and impoverishment, and 5) the absence of a remedy provided by law. *Sun Valley Ranch 308 Ltd. Partnership ex rel. Englewood Properties, Inc., v. Robson*, 231 Ariz. 287, ¶ 22, 294 P.3d 125 (App. 2012).

Higher Connection maintains accounting records that document all compensation paid to Gleason and Baig. The only compensation Gleason and Baig received was the compensation they received for the services they provided to Higher Connection. *Baig Dec. ¶ 25; Gleason Dec., ¶ 25.* Compensation paid through Higher Connection is not unjust enrichment against the Plaintiff and is not an impoverishment of the Plaintiff. *Baig Dec. ¶ 26; Gleason Dec., ¶ 26.*

Plaintiff appears to also be alleging that Gleason and Baig took the Plaintiff's products and sold them outside of the Higher Connection business for personal profit. This did not occur. *Baig Dec. ¶ 27; Gleason Dec., ¶ 27.* All of the Plaintiff's product was sold through Higher Connection, and no product was sold by Gleason or Baig outside of the business.

Finally, the Plaintiff has the legal remedy of suing Higher Connection for an accounting to determine if any money is owed. This matter is simply an accounting issue between Plaintiff and Higher Connection, and the Arizona law cited above (A.R.S. § 29-3304) makes clear that a dispute between the two entities to the Fulfillment Agreement does not create liability on the part of the members and managers of Higher Connection.

Based on the forgoing, there is no triable issue of fact that would prevent this court from granting summary judgment in favor of Gleason and Baig on the claim for conversion.

**VIII. Neither Gleason nor Baig interfered in any business relationship of the Plaintiff.**

The Plaintiff has sued Gleason and Baig for the tort of interference with a business relationship. However, the only actions of Gleason and Baig were to operate Higher Connection in their capacity as the manager and members. No interference with any contractual relations and business expectancy occurred.

The elements for tortious interference with contractual relations or business expectancy are (1) the existence of a valid contractual relationship or business expectancy; (2) the interferer's knowledge of the relationship or expectancy; (3) the interferer's

-12-

intentional interference inducing or causing a breach or termination of the expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Neonatology Assocs., Ltd. V. Phoenix Perinatal Associates, Inc.*, 216 Ariz. 185, ¶ 7, 164 P.3d 691, 693 (App. 2007). Further, "the interference must be improper as to motive or means before liability will attach." *Id.* Finally, to prove tortious interference with a business expectancy the claimant must identify the specific relationship with which the defendant interfered. *Dube v. Likins*, 216 Ariz. 406, 414, 167 P.3d 93, 101 (App. 2007).

Higher Connection merely provided the services set forth in the Fulfillment Agreement. The only actions of Gleason and Baig were to operate Higher Connection in their capacity as the manager and members. As provided in A.R.S. § 29-3304, merely operating Higher Connection does not give rise to a claim for tortious interference with contractual relationship and business expectancy.

In addition, neither Gleason or Baig were aware of any "valid contractual relationship or business expectancy" of the Plaintiff that could form the basis of the claim against them. *Baig Dec. ¶ 28; Gleason Dec., ¶ 28.* And Neither Gleason or Baig took any steps to interfere in any such valid contractual relationship or business expectancy." *Baig Dec. ¶ 29; Gleason Dec., ¶ 29.*

Because neither Gleason nor Baig ever engaged in any conduct that would interfere with any contractual relationship or business expectancy of the Plaintiff, there is no triable issue of fact that would prevent this Court from granting summary judgment in favor of Gleason and Baig on the claim of tortious interference with contractual relationship and business expectancy.

**IX.    Neither Gleason nor Baig converted any property of the Plaintiff.**

Plaintiff has sued Gleason and Baig for conversion. However, Gleason and Baig never engaged in conversion. (*Baig Dec., ¶¶ 25 and 26; Gleason Dec., ¶¶ 25 and 26*).

Conversion is the intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be

required to pay the other the full value of the chattel. *Miller v. Hehlen*, 209 Ariz. 462, ¶ 34, 104 P.3d 193 (App 2005). No conversion occurred in this case. All property of the Plaintiff was delivered to Higher Connection pursuant to the Fulfillment Agreement. Neither Gleason or Baig ever asserted any control or took possession of any property of the Plaintiff. *Baig Dec. ¶ 30; Gleason Dec., ¶ 30.* Again, A.R.S. § 29-3304 makes clear that merely acting as the manager and member of an entity involved in a business transaction does not give rise to liability on the part of the member or manager, and neither Gleason or Baig every personally took control of any of the Plaintiff's product.

The Plaintiff is suing Higher Connection under the Fulfillment Agreement. This is the Plaintiff's breach of contract action. However, because neither Gleason or Baig ever took possession of, or asserted control over, any of the property that belonged to the Plaintiff, neither Gleason nor Baig are property defendants in a claim for conversion. There is no triable issue of fact that would prevent this Court from granting summary judgment on Count VI for conversion.

**X.      Neither Gleason nor Baig engaged in a conspiracy against the Plaintiff.**

Plaintiff has sued Gleason and Baig for a conspiracy to take inventory from the Plaintiff and sell it. This claim in an inappropriate claim because under Arizona law (A.R.S. § 29-3304) merely acting as a member or manager cannot give rise to liability for the actions of the limited liability company they control. However, there are no facts to support the claim. Neither Gleason nor Baig took any steps to conspire with another person to commit any tort against the Plaintiff. (*Baig Dec., ¶ 31; Gleason Dec., ¶ 31).* All of the actions of Gleason and Baig were taken in their capacity as the manager and members of Higher Connection and pursuant to the Fulfillment Agreement. (*Baig Dec., ¶ 31; Gleason Dec., ¶ 31).*

Arizona law provides a civil conspiracy requires an underlying tort which the alleged conspirators agreed to commit. *Baker ex rel. Hall Brake Supply, Inc., v. Stewart Title & Trust fo Phoenix, Inc.*, 197 Ariz. 535, ¶ 42, 5 P.3d 249 (App 2000). However,

Arizona law specifically provides that managing a limited liability company as either a manager or member will not give liability for the actions of the limited liability company. A.R.S. § 29-3304. The Plaintiff has merely plead a civil conspiracy in an effort to avoid the express statutory provisions of A.R.S. § 29-3304. However, the provisions of A.R.S. § 29-3304 are clear. Because the only actions of Gleason and Baig were taken in their capacity as a manager and the members of Higher Connection, there is no triable issue of fact that would prevent this Court from granting summary judgment on behalf of Gleason and Baig on Count IX for conspiracy.

## XI.    Conclusion.

Arizona law prohibits liability being imposed on the managers and members of a limited liability company. In addition, even if this Court rejects the ex press language of A.R.S. § 29-3304, there is no triable issue of facts that would prevent this Court from granting summary judgment on behalf of Gleason and Baig on all claims plead against them in the Complaint.

**DATED** this 18th day of May, 2023.

**THE KOZUB LAW GROUP, PLC**

By:    /s/ William A. Kozub
        William A. Kozub, # 014826
        Richard Hundley, # 019829
        7537 East MacDonald Drive
        Scottsdale, Arizona 85250
        Attorney for Defendants

ORIGINAL of the foregoing e-filed this 18th day of May, 2023, and copy mailed to:

Michael T. Liburdi
United States District Court
District of Arizona
401 W. Washington Street, SPC 1
Phoenix, Arizona 85003

Randy J. Aoyama
Bradley L. Dunn
Meghah Singh
HINSHAW & CULBERTSON, LLP
2375 E. Camelback Road, #750
Phoenix,, Arizona 85016
*Attorneys for Plaintiff*

By: */s/ Mary Ann Bautista*

-16-

TABLE OF CONTENTS OF EXHIBITS

Exhibit A        Declaration of Mirza Baig
                 (with copy of Fulfillment Agreement attached at Exhibit 1)

Exhibit B        Declaration of Zacharia Gleason
                 (with copy of Fulfillment Agreement attached at Exhibit 1)