Law Offices
HINSHAW & CULBERTSON LLP
2375 E. Camelback Rd.
Suite 410
Phoenix, AZ 85016
602-631-4400
602-631-4404
raoyama@hinshawlaw.com
bdunn@hinshawlaw.com
meghasingh@hinshawlaw.com

Randy J. Aoyama (020096)
Bradley L. Dunn (028897)
Megha Singh (036306)
Attorneys for Plaintiff/Counterdefendant Ignite International, Ltd.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ignite International, Ltd., a Wyoming corporation, | Case No. CV-21-2184-PHX-MTL |
| Plaintiff, | **PLAINTIFF IGNITE INTERNATIONAL, LTD.'S RESPONSE TO DEFENDANTS ZACHARIA JAMES GLEASON AND MIRZA BAIG'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| Higher Connection, LLC, a Utah limited liability company, Zachariah James Gleason, Mirza Baig, Higher Connection 3PL LLC, an Arizona limited liability company; and Higher Connection LLC, an Arizona limited liability company, | (Hon. Michael T. Liburdi) |
| Defendants. | **(ORAL ARGUMENT REQUESTED)** |
| Higher Connection LLC, a Utah limited liability company, | |
| Counterclaimant, | |
| vs. | |
| Ignite International, Ltd., a Wyoming corporation. | |
| Counterdefendant. | |

1047429\313859287.v1

Plaintiff Ignite International, Ltd. ("Ignite") hereby respectfully submits its Response to Defendants Zacharia James Gleason ("Gleason") and Mirza Baig's ("Baig", collectively with Gleason, the "Defendants") Motion for Partial Summary Judgment (Doc. 56) (the "Motion").

The Defendants are incorrect that the Arizona Limited Liability Act shields them from liability in this matter. The current section of the Act at issue, A.R.S. §29-3304, has only been effective on matters occurring after September 1, 2020, so there is limited case law on the topic, but several recent courts have held that the current Act does not prevent the courts from disregarding the corporate entity and piercing the corporate veil of a limited liability company ("LLC) in order to prevent injustice or fraud. In fact, it has been the law in Arizona for at least a decade that LLCs are treated the same as corporations when analyzing the 'piercing the veil' doctrine. Defendants' arguments otherwise are meritless.

Further, the Defendants are misconstruing the claims in this case. Although defendant Higher Connection, LLC ("HC") entered into a Fulfillment Agreement with Ignite to be a warehouse and shipping provider, that was not the only relationship the Defendants had with Ignite. The Defendants also acted as a customer and distributor for Ignite, neither of which is governed by the Fulfillment Agreement. As Ignite's distributor, the Defendants had certain fiduciary duties to act in good faith. Instead, the Defendants, along with HC, stole Ignite property that was being held in trust by HC, sold it to third parties acting as Ignite's distributor, and pocketed the proceeds. The fact that HC may have distributed some of the illicit funds to Gleason and Baig under W-2s and 1099s does not immunize the Defendants from liability for their theft. In fact, there are numerous banking records showing that HC transferred hundreds of thousands of dollars to Gleason and Baig's personal online crypto currency accounts during the time period they were stealing Ignite's products. Additionally, Gleason was also employed by Ignite as Vice

President of Distribution during the very time he was stealing Ignite's products. His participation (along with his partner Baig) in the theft of Ignite's products cannot be shielded because the Defendants were also members of HC.

Genuine issues of material facts exist in this matter as to the fraudulent actions, fiduciary relationships, alter ego status, commingling of funds, improper distributions and liability of Gleason and Baig. Accordingly, summary judgment in their favor is improper.

This Response is supported by the following Memorandum of Points and Authorities**,** and additional exhibits attached hereto.[1]

## I. **Legal Standard**

Pursuant to Fed.R.Civ.P. 56(c), a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." It is beyond dispute that "[t]he moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (citation omitted).

"Once the moving party meets its initial burden, …, the burden shifts to the nonmoving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1996) (internal quotation marks and citations omitted). When assessing the record to determine whether there is a "genuine issue for trial," the court must "view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in his favor." *Horphag*, 475 F.3d at 1035 (citation omitted).

---

[1] Pursuant to the Court's Scheduling Order [Doc. 24], no Separate Statement of Facts is being submitted herewith.

3

Likewise, the court may not make credibility determinations; nor may it weigh conflicting evidence. *Harrison v. Howmedica Osteonics Corp.*, No. CIV 06-0745 PHX RCB, 2008 U.S. Dist. LEXIS 26197, at *59 (D. Ariz. Mar. 27, 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986). "Thus, as framed by the Supreme Court, the ultimate question on a summary judgment motion is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law". *Id*.

## II.    A.R.S. §29-3304

The Defendants argue that the passage of A.R.S. §29-3304 in 2019 by the Arizona Legislature prevents any "piercing the corporate veil" claims against Arizona LLCs ever again in this State. (Doc. 56, 4:8-10.) This is an extreme misinterpretation of the statute. There is no language in the statute which prevents such a claim. A simple review of the statute makes clear that it is only seeking to advise that a "member or manager" cannot be liable "*solely* by reason of being or acting as a member or manager." A.R.S. §29-3304(A) (emphasis added). The statute does not prevent liability when a member or manager (as in this matter) committed theft, fraud and negligence in the management of the corporate affairs causing the alleged injury. To hold as such would allow any individual to start an LLC in Arizona and commit numerous fraudulent acts with no personal repercussion or liability. This is simply an incorrect interpretation of the statute.

Several recent District of Arizona and Arizona Court of Appeals courts have even been presented with the current statute and held that members of a LLC can still be held personally liable for an LLC's actions if the facts provide a basis for piercing the corporate veil. *See*, *SPUS8 Dakota LP v. KNR Contractors LLC*, No. CV-19-05477-PHX-MTL, 2022 U.S. Dist. LEXIS 141700, at *16 (D. Ariz. Aug. 9, 2022) (after citing A.R.S. §29-3304(A), the Court held that a member of a LLC could be held personally liable for the company's actions if the claims against the company were successful); *see*

4

*also Sanford v. DNA Invs., L.L.C.*, No. 1 CA-CV 20-0353, 2021 Ariz. App. Unpub. LEXIS 524, at *8 (Ct. App. May 6, 2021), quoting *Loiselle*, 224 Ariz. 207, 214, 228 P.3d 943, 950 (App. 2010) (after citing A.R.S. §29-3304(A), the Court held that it will "disregard the corporate entity and pierce the corporate veil [of a LLC] if there is sufficient evidence that 1) the [LLC] is the 'alter ego or business conduit of a person,' and 2) disregarding the [LLC's] separate legal status is 'necessary to prevent injustice or fraud'"); *Stratton Restoration LLC v. Burton*, No. 1 CA-CV 20-0455, 2022 Ariz. App. Unpub. LEXIS 354, at *5-6 (Ct. App. Apr. 28, 2022) (same, after citing A.R.S. §29-3304(A), the Court held that evidence as required by *Loiselle* could still be used to pierce the corporate veil of an Arizona LLC); *Solie v. Health Care@Home, LLC*, No. CV-19-05399-PHX-JJT, 2020 U.S. Dist. LEXIS 63221, at *12 (D. Ariz. Apr. 10, 2020) ("[Arizona] law permits piercing of the corporate veil [against an LLC].")

The Defendants' reliance upon the unpublished case of *All Custom Exteriors, Inc. v. Bilyea*, No. 1 CA-CV 10-0702, 2011 Ariz. App. Unpub. LEXIS 1456 (Ct. App. Nov. 29, 2011) for the argument that Arizona law does not allow piercing the corporate veil against an LLC is likewise misplaced and incorrect. (Doc. 56, 5:13-6:4.) First, that court actually held that an Arizona LLC's corporate veil could be pierced and that judgment against the individual owners was proper. (*Id.* at *19.) Second, several Arizona District Courts have quoted *All Custom Exteriors, Inc.* and held that piercing the corporate veil is available against Arizona LLCs. *See*, *Great Am. Duck Races, Inc. v. Intellectual Sols., Inc.*, No. 2:12-cv-00436 JWS, 2013 U.S. Dist. LEXIS 36190, at *6 (D. Ariz. Mar. 15, 2013) ("this court concludes that the rationale behind piercing the veil of a corporation would also apply to an LLC given the similar liability shields that are provided by corporations and LLCs to their respective owners"); *Haese v. Stewart Title Guar. Co.*, No. CV-10-01687-PHX-SRB, 2013 U.S. Dist. LEXIS 202477, at *11 n.7 (D. Ariz. July 19, 2013) ("Arizona case law suggests that the piercing doctrine is the same regardless of

5

whether a case involves a corporation or a LLC"); *Bird v. DJO LLC*, No. CV-17-03241-PHX-SPL, 2020 U.S. Dist. LEXIS 39115, at *11 (D. Ariz. Mar. 6, 2020) ("Arizona law treats limited liability companies the same as corporations for purposes of alter ego/piercing the corporate veil.")

Accordingly, the Defendants' argument concerning A.R.S. §29-3304 and the inability to pierce an Arizona LLC's corporate veil is meritless and should be disregarded.

## III.     Piercing the Corporate Veil

There is a genuine factual dispute concerning whether HC was merely the Defendants' alter ego, thus justifying application of the 'piercing the corporate veil' doctrine and preventing summary judgment in favor of the Defendants on all counts. A corporate entity will be disregarded, and the corporate veil pierced, if there is sufficient evidence that "1) the corporation is the 'alter ego or business conduit of a person,'; and 2) disregarding the corporation's separate legal status is 'necessary to prevent injustice or fraud.'" *Loiselle*, 224 Ariz. at 214, citing *Dietel v. Day,* 16 Ariz. App. 206, 208, 492 P.2d 455, 457 (1972), and then citing *State v. Angelo,* 166 Ariz. 24, 27, 800 P.2d 11, 14 (App. 1990).

"Alter-ego status . . . exists when there is such a unity of interest and ownership that the separate personalities of the corporation and owners cease to exist." *Solie*, 2020 U.S. Dist. LEXIS 63221, at *10, citing *Dietel*, 492 P.2d at 457. "Relevant factors to consider in determining the existence of an alter ego relationship include 'payment of salaries and expenses' by the owner, an 'owners' making of interest-free loans to the corporation,' 'commingling of personal and corporate funds,' 'diversion of corporate property' for personal use," among others. *Id*. at *10-11, citing *Deutsche Credit Corp. v. Case Power & Equip. Co.*, 179 Ariz. 155, 876 P.2d 1190, 1195-96 (Ariz. Ct. App. 1994).

6

There is such a unity of interest and ownership between the Defendants and HC that no separation between the two exists, and to treat them separately would work an injustice on Ignite. More specifically, the Defendants (1) paid personal expenses from HC funds; (2) took or received improper distributions and/or payments from HC; (3) co-mingled their personal funds with HC funds (and HC made no distinction between its own funds and the funds of the Defendants); and (4) failed to keep proper corporate and payroll records for HC.

## A. <u>Alter-Ego Status</u>

Due to lack of disclosure by the Defendants, Ignite was forced to subpoena HC's bank account records from Wells Fargo Bank, N.A. and Bank of America, N.A. (Docs. 35, 36.) The banking records showed that HC transferred large sums of money into online crypto currency accounts owned by Baig and Gleason in 2021. In fact, HC made $210,730.27 in transfers to Baig's Robinhood account in 2021. (**Ex. 1**). This is despite the fact that Baig disclosed a W-2 from HC showing his total salary in 2021 <u>was only $176,002.28</u>. (**Ex. 2**) The Wells Fargo banking records also showed that HC made $175,000 in transfers to Gleason's Coinbase account and Prime Trust LLC (Ex. 3 at pp. 1-2, 4-8), $5,000 in transfers to Gleason's Robinhood account (**Ex. 3** at p. 12), $7,242.17 in transfers to Gleason's Cash App account (Ex. 3 at pp. 10-11), $34,500 in unidentified "online transfers" or "WT" to Gleason in 2021 (Ex. 3 at pp. 1-4, and 9), and $958 Venmo payments to Gleason (Ex. 3 at pp. 13-17). Additionally, the Bank of America records showed that HC made $2,500 in Zelle payments (**Ex. 4** at p. 1), $11,500 "online banking transfer[s]" (Ex. 4 at pp. 1 and 3), and a payment of $616.39 to Toyota Financial on behalf of Gleason. (Ex. 4 at p. 2). The aggregate of these transfers to Gleason amounts to $237,316.56. This is despite the fact that Gleason disclosed a W-2 from HC showing his total salary in 2021 <u>was only $234,888.05</u>. (**Ex. 5**). There has been no explanation provided by Baig or Gleason for this $448,046.83 in improper distributions and/or

7

1047429\313859287.v1

commingled and unaccounted for funds in 2021. In December 2021 alone, HC wrote checks totaling $6,500 to Baig. (**Ex. 6**). The banking records even show that Baig and Gleason transferred a total of $6,986.27 of HC funds to their "Mom" and a total of $1,327.00 to "James Dean and Betty White" in 2021. (**Ex. 7**).

Despite the fact that HC transferred $210,730.27 to Baig's Robinhood account in 2021, Baig disclosed his December 31, 2021 Robinhood account summary showing a balance of only $167.93. (**Ex. 8**). It is clear, or at least a disputed fact, that HC was in reality an alter ego of Baig and Gleason, who used the stolen funds from Ignite to finance speculative investing in crypto currency and/or to pay their personal expenses.

This use of funds has absolutely no relation to HC's business purpose of providing warehousing services in Arizona. "If a [LLC] was formed or is employed for fraudulent purposes then clearly the corporate fiction should be disregarded." *Dietel*, 16 Ariz. App. at 208. In addition to presenting evidence of intermingling of corporate and personal assets, affairs or funds, to establish that an LLC is the alter ego of an individual, a plaintiff can present evidence "that the corporate structure was in any way used for other than legitimate corporate purposes." *JTF Aviation Holding Inc. v. CliftonLarsonAllen LLP*, 249 Ariz. 510, 514, 472 P.3d 526, 530 (2020).

Baig and Gleason used HC as a personal bank account to fund their personal crypto currency investing activities. They failed to keep proper corporate and payroll records as shown by Baig and Gleason's fraudulent W-2s. They used HC to pay personal expenses and transferred money to family members who have no relation to the business. The actions of Baig and Gleason present a genuine issue of factual dispute which prevents summary judgment in their favor on all counts. If HC is liable to Ignite, Baig and Gleason should be held personally liable to Ignite. In the least, it is for a jury to decide this issue and summary judgment at this stage is improper.

1047429\313859287.v1

## B. Prevent Injustice or Fraud

Disregarding HC's corporate status is necessary to prevent injustice or fraud in this matter. As outlined in Ignite's Motion for Partial Summary Judgment, HC owes it $1,819,799.71, plus interest and attorneys' fees and costs, due to HC's blatant theft of Ignite products, unfilled orders, improper storage, and unpaid Account Receivables. (Doc. 55.) HC (through Baig and Gleason) callously used its relationship as a warehouse and shipping provider, as well as a distributor, of Ignite products to steal from and disrupt Ignite's business.

Based upon the most recent bank accounts' statements received by Ignite from Bank of America dated February 28, 2022, HC only had $199,115.55 in cash left to its name on that date. (**Ex. 9**) It is assumed that over the past year and a half the amount is even lower as Ignite was HC's largest client and the relationship was terminated due to the actions of HC.

Disregarding the LLC's separate legal status would prevent injustice or fraud by preventing Baig and Gleason from escaping liability after they blatantly used HC to fund their personal crypto currency investing activities and personal expenses by stealing approximately $1.8M from Ignite. They have left HC unable to pay the amounts owing to Ignite with their fraudulent actions and it would be an injustice to allow them not to be held personally liable.

## IV. Distributor Business

In addition to the Fulfillment Agreement entered into between HC and Ignite for warehousing and shipping services, HC (through Baig and Gleason) also had a side business wherein it acted as a distributor of Ignite products. (Doc. 55-1[2], Ex. 1 at ¶14.)

---

[2] An accurate copy of Scott Rohleder's Declaration (Doc. 55-1) is included in the packet for delivery to Hon. Liburdi.

1047429\313859287.v1

HC would purchase Ignite products, sell them in the marketplace and repay Ignite for the products sold. (*Id.* at ¶15.) This distributor business by the Defendants is not governed by the Fulfillment Agreement.

The distribution business is more properly described as an open account. "Generally speaking, an open account is one where there are running or concurrent dealings between the parties, which are kept unclosed with the expectation of further transactions . . ." *Best W.. Int'l, Inc. v. Richland Hotel Corp. GP, Ltd. Liab. Co.*, No. CV-11-1246-PHX-LOA, 2012 U.S. Dist. LEXIS 24169, at *24 (D. Ariz. Jan. 18, 2012), citing *Continental Cas. Co. v. Grabe Brick Co.*, 1 Ariz.App. 214, 217, 401 P.2d 168, 171 (Az.Ct.App. 1965).

This relationship between Ignite and the Defendants is supported by the declaration of Scott Rohleder, CFO of Ignite, (Doc. 55-1, Ex. 1, ¶¶14-26) and the numerous purchase orders or invoices disclosed by the parties. (Doc. 55-9, Ex. 9, an example of a purchase order.) Accordingly, the Defendants' arguments concerning the inability to be held personally liable for the debts of HC due to the terms of the Fulfillment Agreement do not absolve them of liability in this matter.

## V.    <u>Gleason's Employment with Ignite</u>

Gleason disclosed a W-2 from Ignite wherein he was paid $86,628.75 as the Vice President of Distribution for Ignite in 2021. (**Ex. 10**) In Arizona, an employee owes his employer a fiduciary duty, which includes a duty of loyalty." *Sec. Title Agency, Inc. v. Pope*, 219 Ariz. 480, 492, 200 P.3d 977, 989 (Ct. App. 2008). While Gleason was acting as the Vice President of Distributing for Ignite, he was also acting as a distributor on his own and stealing Ignite products to fund his personal expenses and online crypto investments. "In Arizona, the elements of a claim for breach of fiduciary duty are the existence of a duty owed, a breach of that duty, and damages causally related to such

10

breach." *Alexander v. Golden Margarita LLC*, No. CV-22-00781-PHX-DWL, 2023 U.S. Dist. LEXIS 21461, at *20 (D. Ariz. Feb. 8, 2023).

Gleason breached his duty by stealing approximately $1.8M in Ignite products while employed by Ignite. Ignite has obviously been damaged by his actions. His participation (along with his partner Baig) in the theft of Ignite's products cannot be shielded because the Defendants were also members of HC. Further, it would be unjust to allow Gleason to benefit from the theft of Ignite's products while employed by Ignite without compensating Ignite.

## VI. <u>Self-Serving Declarations</u>

Against the undisputed evidence presented above, the Defendants have presented bare declarations attesting that the Defendants "never commingled funds with the Higher Connection bank accounts" and "the only funds received by [Baig and Gleason] were paid pursuant to W-2 or 1099 requirements." (Doc. 56-1, pg.4, ¶¶16-17; pg. 32, ¶¶16-17.) These statements, as shown above, are false. Further, they are self-serving declarations that should be disregarded by the Court. *See, Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015) ("[A] self-serving declaration does not always create a genuine issue of material fact for summary judgment: The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence."); *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *Anthony v. TRAX Int'l Corp.*, No. CV-16-02602-PHX-ESW, 2018 U.S. Dist. LEXIS 64205, at *9 (D. Ariz. Apr. 16, 2018), citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("The Ninth Circuit has 'refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.'")

11

The declarations by Baig and Gleason are in direct contradiction of the banking records for HC. They provide no supporting evidence or detailed facts supporting their statements. The declarations clearly provide uncorroborated, self-serving testimony and should be disregarded by this Court. Moreover, the jury will be charged with assessing their credibility.

## VII.    Conclusion

Genuine issues of material facts exist in this matter as to the fraudulent actions, fiduciary relationships, alter ego status, commingling of funds, improper distributions and liability of Gleason and Baig. Accordingly, summary judgment in their favor is improper. Ignite respectfully requests that the Court deny the Defendants' Motion for Partial Summary Judgment.

DATED this 19th day of June, 2023.

HINSHAW & CULBERTSON LLP

/s/ Bradley L. Dunn
Randy J. Aoyama
Bradley L. Dunn
Megha Singh
*Attorneys for Plaintiff/Counterdefendant*
*Ignite International, Ltd.*

12

# CERTIFICATE OF SERVICE

I certify that on the 19th day of June 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

William A. Kozub, Esq.
Richard Hundley, Esq.
**THE KOZUB LAW GROUP, PLC**
7537 East McDonald Drive
Scottsdale, AZ 85250
*Attorneys for Defendants Zachariah James Gleason, Mirza Baig, and Defendants/Counterclaimants, Higher Connection LLC (Utah), Higher Connection 3PL LLC, and Higher Connection LLC (Arizona)*

By    /s/ Tammy Kassen

13