TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division
DAVID C. LACHMAN (Cal. Bar No. 261711)
Assistant United States Attorney
National Security Division
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:     (213) 894-5564
     Facsimile:     (213) 894-2927
     E-mail:          david.lachman@usdoj.gov

Attorneys for Intervenor
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ignite International, Ltd.,<br><br>          Plaintiff,<br><br>          v.<br><br>Higher Connection, LLC, Zachariah James Gleason, Mirza Baig, Higher Connection 3PL LLC, and Higher Connection LLC,<br><br>          Defendants. | No. CV-21-2184-PHX-MTL<br><br>MOTION TO INTERVENE, TO STAY PROCEEDINGS, AND TO HOLD STATUS HEARING ON OR BEFORE APRIL 16, 2026<br><br>**(EXPEDITED CONSIDERATION REQUESTED)** |

The United States of America ("United States" or "Government") respectfully moves (1) to intervene in this action under Rule 24 of the Federal Rules of Civil Procedure; (2) for a stay of proceedings in light of the ongoing criminal prosecution in *United States v. Bilzerian et al.*, 2:24-CR-00569-MEMF (C.D. Cal.) (the "Criminal Case"), which is set for trial on October 19, 2026; or, in the alternative, (3) to hold a status hearing on or before April 16, 2026, given that plaintiff Ignite International, Ltd. ("Ignite"), has noticed the depositions of likely government witnesses in the criminal trial for April 17, 2026.

By email on April 9, 2026, the Government, as proposed intervenor, notified the parties to this action of its intention to file this Motion. (Declaration of David C. Lachman ("Lachman Decl.") ¶ 6.) The Government then conferred further with the parties by teleconference on April 9, 2026. (*Id.*)On April 9, 2026, plaintiff Ignite notified the government that it does not object to the government's request to intervene and for expedited consideration of this Motion, but Ignite indicated that it opposes a stay of the proceedings or discovery in this action. (*Id.*) On April 9, 2026, defendants Higher Connection, LLC, Zachariah Gleason, Mirza Baig, Higher Connection 3PL LLC, and Higher Connection LLC notified the government that they do not oppose the Motion. (*Id.* ¶ 7.)

This Motion is based upon the following Memorandum of Points and Authorities, the accompanying declaration of David C. Lachman and accompanying exhibits, the files and records in this case and in the Criminal Case, and such further evidence and argument as the Court may permit.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In a parallel criminal case, *United States v. Paul Bilzerian, et al.,* No. 24-CR-00569-MEMF (C.D. Cal.) (the "Criminal Case"), Ignite International, Ltd. ("Ignite"), Paul Bilzerian ("Bilzerian"), and Scott Rohleder ("Rohleder") (collectively, the "Criminal Defendants") are charged in part with schemes to defraud investors by fraudulently inflating Ignite's reported revenue through sham sales of vape product inventory, and to defraud the United States by concealing Bilzerian's assets and de facto control over Ignite to evade a more than $180 million SEC Disgorgement Order. (Lachman Decl. Ex. B ("First Superseding Indictment") ¶¶ 1–10.) Central to the fraud charges, the First Superseding Indictment alleges that Ignite contracted with defendant Higher Connection—referred to as "Company 1"—to serve as a distributor and third-party logistics provider for Ignite's vape products, and that Higher Connection repeatedly clarified to Ignite that it was storing—not purchasing—the inventory that Ignite later booked as revenue. (*Id.* ¶¶ 6(a)–(c).) Those allegations involve the same third-party logistics relationship and inventory at issue in this case (the "Civil Case"). (*See* Dkt. 1 ¶¶ 12-20.)

Ignite—which is both a criminal defendant and the civil plaintiff driving discovery in this action—has noticed the depositions of Zachariah James Gleason ("Gleason") and Mirza Baig ("Baig") for April 17, 2026. Because those witnesses are likely Government witnesses in the Criminal Case, and because the factual overlap between the two proceedings is pervasive, the Court should permit the Government to intervene and should stay all proceedings pending the criminal trial, which was set for October 19, 2026 at the request of Ignite. The Court authorized these depositions in its February 18, 2026, order before the Government sought intervention. The Government does not ask the Court to rescind that order, but to temporarily defer the depositions—for approximately six months—in light of the circumstances set forth below. A stay is necessary to protect

the integrity of the Criminal Case and prevent Ignite from using civil proceedings as an end-run around the limitations of criminal discovery.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Criminal Case

On September 26, 2024, a Grand Jury returned an indictment in the Criminal Case, charging Ignite, Bilzerian, and Rohleder. (Lachman Decl. Ex. A.) On September 30, 2025, the Grand Jury returned a First Superseding Indictment charging eight counts, including conspiracy to commit wire fraud and securities fraud relating to the Criminal Defendants' fraudulent scheme to mislead investors regarding defendant Ignite's revenue in the fourth quarter of 2020. (First Superseding Indictment ¶¶ 5-17 (Counts Two through Five).)[1] At the request of Ignite, the government agreed to stipulate to a trial continuance, and the Criminal Case is set for trial on October 19, 2026. (*See* Criminal Case, Dkts. 170, 174).[2]

Central to the fraud charges, the Indictment alleges that Ignite contracted with Higher Connection—"Company 1" in the Indictment—to serve as a third-party logistics provider for Ignite's vape products, and that Higher Connection repeatedly clarified to Ignite that it was storing, not purchasing, the inventory that Ignite later booked as revenue in misleading press releases. (First Superseding Indictment ¶¶ 6(a)–(c).) Defendant Ignite nonetheless included that unsold inventory held by Higher Connection in inflated sales figures in press releases about Ignite's sales performance during the fourth quarter of

---

[1] Count One charges the Criminal Defendants with conspiring to defraud the United States by concealing defendant Bilzerian's assets, financial interest in, and control over defendant Ignite to dodge a more than $180 million SEC Disgorgement Order. Counts Seven through Nine charge defendant Rohleder with assisting in the preparation of false tax returns.

[2] As noted below, the parties are also involved in litigation in another civil case pending in the Southern District of New York, As an express condition of the government's agreement to continue the trial date in the Criminal Case, Ignite agreed and stipulated that "a stay of the parallel civil case until the resolution of the criminal trial is in their interests and will not cause substantial prejudice to them." (Criminal Case, Dkt. 170 at 4 n.1.)

4

2020, causing Ignite's share price to increase from approximately $0.42 to $1.20 per share. (*Id.* ¶¶ 5-10.)

Gleason and Baig are likely to be key Government witnesses. (Lachman Decl. ¶ 5.) On January 16, 2021, in an email exchange on which Baig was copied, Gleason told Bilzerian that Higher Connection "did not take financial responsibility for these invoices" and confirmed that the inventory belonged to Ignite. (First Superseding Indictment ¶ 6(c).) Gleason subsequently refused to sign an audit confirmation letter from Ignite's auditor because the invoices were for inventory held under the 3PL arrangement. (*Id.* ¶ 8(a).) On January 28, 2021, on a phone call with Gleason, Baig, and Gleason's counsel, Bilzerian stated that if Gleason refused to sign the audit letter, he would pay for the inventory "out of his own pocket." (*Id.* ¶ 9, Overt Act No. 1.)

Specifically, on January 22, 2021, Gleason received an email from Ignite's auditor, Accell, asking Gleason to sign a letter confirming approximately $5.19 million in accounts receivable that Higher Connection purportedly owed to Ignite. Gleason refused to sign because the invoices—totaling approximately $5.09 million—were for inventory being held under the third-party logistics arrangement, not inventory that Higher Connection had purchased. On January 28, 2021, following an exchange of emails between Bilzerian and Gleason, Bilzerian, Gleason, Baig, and Gleason's counsel held a phone call, during which Bilzerian said that if Gleason refused to sign the audit letter, Bilzerian would "fix the situation" by paying for the $5 million worth of vape product inventory "out of his own pocket" and cutting Higher Connection out of the deal. Gleason's counsel responded that Gleason would not sign what he called a "fraudulent" audit letter, and the call ended.

### B.    This Civil Case

Ignite filed this action on December 21, 2021 (Dkt. 1), asserting ten causes of action against the Higher Connection entities, Gleason, and Baig arising from the same fulfillment agreement at the center of the Criminal Case. On December 14, 2023, the Court granted partial summary judgment for Ignite on its breach of contract claims

against the Higher Connection entities but for Gleason and Baig individually on Ignite's piercing the corporate veil claim. (Dkt. 67.) The parties entered a stipulated judgment of $900,000 against the Higher Connection entities on June 26, 2024. (Dkt. 82.) On January 30, 2026, the Ninth Circuit reversed and remanded the piercing ruling. (Dkt. 136.)

After remand, the Court reopened discovery on a limited basis, permitting depositions of Gleason and Baig based on the current record. (Dkt. 140.)[3] The parties agreed that "[n]either party shall be permitted to question Gleason and Baig regarding any pending criminal matters." (Dkt. 141.) On April 8, 2026, Ignite noticed the Gleason and Baig depositions for April 17, 2026. (Lachman Decl. Ex. C.) A status and trial-setting conference is set for May 5, 2026. (Dkt. 140.)

### C.    The Parallel SEC Case and the Criminal Defendants' Interest in Deposing Gleason and Baig

The SEC filed a parallel civil enforcement action in the Southern District of New York on September 27, 2024. *See SEC v. Ignite Int'l Brands, Ltd.,* No. 24 Civ. 7331 (S.D.N.Y.) (the "SEC Case"). The Government filed a motion to intervene and stay that case on September 22, 2025 (*Id.* Dkt. 80), which motion remains pending. On March 13, 2026, defendant International Investments—represented by the same attorney as criminal defendant Rohleder—noticed the depositions of Gleason and Baig in the SEC Case.[4] (Lachman Decl. ¶ 4.) On March 16, 2026, the Government filed a letter renewing its stay motion and advising the Court that Ignite took no position, Rohleder did not oppose, and the remaining defendants opposed. (SEC Case Dkt. 102.) The following day, on March 17, 2026, Magistrate Judge Wang entered an interim order staying all deposition

---

[3] The Government respectfully acknowledges that the Court authorized these depositions in its February 18, 2026, order. At the time of that order, the Government had not sought intervention in this case, and the Court did not have before it the information set forth in this Motion regarding the overlap between these depositions and the Criminal Case, the Criminal Defendants' stated objective of obtaining Gleason's testimony across multiple civil proceedings, or the interim stay order entered in the parallel SEC Case. The Government does not ask the Court to rescind its discovery order, but rather to temporarily defer the authorized depositions until the conclusion of the criminal trial.

[4] Gleason is identified as "Individual 1" in the SEC complaint. (*See* SEC Case Dkt. 1 ¶¶ 47–72, 82–98.)

discovery in the SEC Case pending resolution of the Government's motion to intervene and stay, and directed the Government to file monthly status reports regarding the Criminal Case. (Lachman Decl. Ex. C.) The circumstances here are materially identical: a party aligned with the Criminal Defendants has noticed the deposition of the same witnesses—Gleason and Baig—whose testimony is central to the Criminal Case. (Lachman Decl. Ex. D.) On March 17, 2026, Magistrate Judge Wang entered an interim order staying all deposition discovery in the SEC Case. (SEC Case Dkt. 103.) In the Criminal Case, defendants Ignite and Rohleder stipulated in December 2025 that a stay of the parallel civil case is "in their interests and will not cause substantial prejudice to them." (*Id.* Dkt. 94-2 at 4 n.1.)

At a Rule 26(f) conference in the SEC Case on August 8, 2025, defendant Bilzerian—who is both a charged criminal defendant and a *pro se* civil defendant in the SEC Case—made clear that one of his "primary goals in pursuing discovery" in the SEC Case was to depose Gleason. (*Id.* Dkt. 112 at 5–6.) On September 8, 2025, defendants in the SEC Case issued subpoenas for testimony to both Baig and Higher Connection, consistent with Bilzerian's stated objective, without conferring with the SEC or coordinating scheduling. (*Id.*) The Criminal Defendants' interest in deposing Gleason and Baig is thus not incidental—it is a stated litigation objective driven by the Criminal Defendants themselves.

## III.    LEGAL STANDARD

A court may permit intervention under Rule 24 when the applicant has an interest relating to the subject of the action that existing parties do not adequately represent. Fed. R. Civ. P. 24(a)(2). Alternatively, permissive intervention is appropriate when the applicant shares common questions of law or fact with the main action. Fed. R. Civ. P. 24(b)(1)(B). Rule 24 "traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano,* 324 F.3d 1078, 1083 (9th Cir. 2003).

With respect to the requested stay, the Court has discretion to stay civil proceedings "when the interests of justice seem to require such action." *Keating v. Office*

*of Thrift Supervision,* 45 F.3d 322, 324 (9th Cir. 1995) (cleaned up). In balancing the relevant interests, "a trial judge should give substantial weight to [the public interest in law enforcement]." *Bureerong v. Uvawas,* 167 F.R.D. 83, 87 (C.D. Cal. 1996) (quoting *Campbell v. Eastland,* 307 F.2d 478, 487 (5th Cir. 1962)) (alteration in original); *see also Baker v. SeaWorld Entertainment, Inc.*, 2018 WL 1726534, at *3 (S.D. Cal. Apr. 10, 2018).

**IV.    ARGUMENT**

The Government's request to intervene and for a full stay should be granted. If litigation and discovery in the Civil Case were to proceed at this time, there would be a risk of significant interference with the Criminal Case as well as waste of judicial time and resources. The requested stay would not prejudice any of the parties to the Civil Case; would prevent the circumvention of important limitations on criminal discovery; and would preserve judicial resources because the outcome of the Criminal Case may significantly affect the remaining claim in the Civil Case.

**A.    Intervention Under Rule 24 Is Appropriate**

"[I]t is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway that involves common questions of law or fact." *SEC v. FAT Brands, Inc.,* 2024 WL 5319127, at *3 (C.D. Cal. Dec. 13, 2024) (collecting cases). The Government has a "distinct and discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter," and "[c]learly, neither the [p]laintiffs nor the [d]efendants have this identical interest." *Bureerong,* 167 F.R.D. at 86.

As a threshold matter, no party opposes the government's request to intervene in this case or request for expedited consideration. (Lachman Decl.¶¶ __-__..) But in any event, both bases for intervention—as of right and permissive—are satisfied here. The Criminal Case and Civil Case arise from the same fulfillment agreement, the same warehouse, and the same inventory. No existing party represents the Government's

interest in protecting the integrity of its criminal prosecution. The motion is timely because the Court reopened discovery on a limited basis in February 2026, and the Government filed promptly upon learning that Ignite had noticed the depositions of likely Government witnesses for April 17, 2026. *See id.* (finding intervention timely where motion filed "one week after [the Government] received notice that discovery in this case had commenced"). Intervention for the limited purpose of seeking a stay will not prejudice the parties. *See SEC v. Christian Stanley, Inc.,* 2012 WL 13009158, at *4 (C.D. Cal. Sept. 6, 2012).

### B.    The Court Should Stay the Proceedings in the Interests of Justice

The Court has discretion to stay civil proceedings when it is in the "interests of justice." *Keating,* 45 F.3d at 324. The Ninth Circuit generally considers "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspects of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; . . . (5) the interest of the public in the pending civil and criminal litigation; and (6) the defendant's Fifth Amendment rights." *Nicholas,* 569 F. Supp. 2d at 1069 (quoting *Keating,* 45 F.3d at 324-25). These factors considered in the Ninth Circuit supports staying discovery here.[5]

### 1.    The Requested Stay Will Not Prejudice Plaintiff

The requested stay would not unduly delay the expeditious resolution of plaintiff Ignite's claims. The requested stay is for a limited duration—until the conclusion of the Criminal Case, which is set for trial in October 2026 at the request of Ignite. *See, e.g.,*

---

[5] The burden-on-defendant factor in the *Keating* analysis is "tailored for the situation in which the *defendant* is seeking a stay of civil proceeding in light of a parallel criminal proceeding," and is therefore "not applicable when the *government* is the party seeking stay and the defendant opposes it." *Christian Stanley, Inc.*, 2012 WL 13009158, at *4 (emphasis in original). Here, Gleason and Baig—the defendants whose depositions are at issue—do not oppose this Motion, rendering the burden-on-defendant and Fifth Amendment factors inapposite.

*Baker*, 2018 WL 1726534, at *3. Moreover, the defendants—who are the parties whose depositions are at issue and who would be most directly affected by any delay—do not object to the request for a stay. Ignite has already obtained a $900,000 stipulated judgment against the Higher Connection entities. (Dkt. 82.) The sole remaining claim is Count X (Piercing the Corporate Veil) against Gleason and Baig personally. While Ignite has an interest in resolving that claim, the stay would be for only approximately six months. Ignite itself has represented in the Criminal Case that a stay of the parallel SEC civil case is "in [its] interests and will not cause substantial prejudice" and the stipulation containing that representation was signed by Ignite's current CEO, Rupy Dhadwar (Criminal Case Dtk. 170 at 4, 7 n.1.) In fact, the government required Ignite to represent that it would not oppose a stay of proceedings in the SEC Case so that Ignite or its related entities and employees could not circumvent rules restricting civil discovery tools for federal criminal cases. Ignite cannot credibly argue that a stay of this parallel civil case would cause undue prejudice while simultaneously conceding the opposite in the SEC Case. The case has been pending since December 2021 and has already experienced multiple delays—including the stipulated judgment, appeal, and remand—without any party claiming irreparable harm. *See SEC v. Nicholas*, 569 F. Supp. 2d at 1069–73 (granting full stay over party's opposition where criminal case was set for trial within months).

        2.      <u>The Requested Stay May Streamline the Civil Litigation</u>

The core facts underlying both proceedings substantially overlap. The Criminal Case charges center on whether Higher Connection purchased Ignite's vape product inventory in the fourth quarter of 2020 or whether Ignite was merely storing the inventory at Higher Connection's warehouse under a third-party logistics arrangement and then fraudulently booking it as revenue. The Civil Complaint characterizes the same inventory movement as theft by Higher Connection. Although the remaining claim on remand — piercing the corporate veil—presents distinct legal questions about corporate formalities and alter-ego liability, the underlying conduct that Ignite must prove to satisfy the "fraud

or injustice" prong of the veil-piercing test arises from the same fulfillment agreement, the same inventory, and the same course of dealing between Higher Connection and Ignite. The January 2021 emails between Gleason and Bilzerian, the audit confirmation letter, and the January 28 phone call are relevant to both proceedings. A stay would allow the Criminal Case to resolve threshold factual questions that may narrow or inform the issues in the Civil Case.

As a general matter, "considerations of judicial economy weigh most strongly in favor of staying a civil proceeding or aspects of the civil proceeding when a parallel criminal proceeding is pending at the same time and involves overlapping issues." *Christian Stanley, Inc.*, 2012 WL 13009158, at *5. That is because "a stay may increase efficient use of judicial resources through the application of collateral estoppel." *Id.*[6] For example, a conviction in the Criminal Case may conclusively establish that Ignite engaged in a fraudulent scheme involving sham inventory sales—which bears on the credibility of Ignite's claims in this case that Higher Connection "stole" the same inventory.

A full stay of proceedings—rather than a stay limited to discovery—is necessary here. If the Court were to stay only the depositions but allow the case to proceed to trial on the veil-piercing claim, Ignite could simply call Gleason and Baig as witnesses at trial and elicit the same testimony the Government seeks to protect. Gleason and Baig are the defendants in this action; they will be present at any trial. Trial testimony would be public, on the record, and would generate the same Jencks Act and impeachment concerns as deposition testimony—indeed, it would be worse from the Government's perspective, because it would be a more complete and detailed presentation of each

---

[6] *See also id.* at *5 ("If the criminal case were to result in a criminal conviction, collateral estoppel may resolve common issues between the proceedings, thereby streamlining the civil proceeding"); *Nicholas*, 569 F. Supp. 2d at 1071 ("collateral estoppel in the criminal case may expedite the resolution of the civil case"); *Bureerong*, 167 F.R.D. at 87 ("some common factual questions may be conclusively determined in the criminal action," which "would pare down the issues to be determined in the civil case, and serve the interests of judicial economy by narrowing the focus of the action to the benefit of the litigants").

11

witness's account. A discovery-only stay would therefore be a hollow remedy that fails to address the Government's legitimate interests. Moreover, the outcome of the Criminal Case may significantly affect the remaining veil-piercing claim. If Ignite is convicted of fraud in connection with the same inventory transactions underlying its civil claims, the preclusive effect of that conviction could substantially alter the posture of this case. The Criminal Case is set for trial in October 2026; a full stay would defer this case for only a matter of months.

Judicial economy thus weighs in favor of a stay.

    3. <u>The Government's Interests Support the Requested Stay</u>

The Government has a compelling interest in staying this case to protect the integrity of its criminal prosecution. "The interest of the public may be reasonably inferred by the United States of America's . . . stance on the parallel proceedings." *Bell on Behalf of Eco Sci. Sols., Inc. v. Taylor*, 2019 WL 1877285, at \*4 (D. Haw. Apr. 26, 2019); *see also Bureerong*, 167 F.R.D. at 87 (noting that the "interests of the Government in protecting its criminal investigation are clearly [a] paramount concern").

If this case is not fully stayed, Ignite—which is both the civil plaintiff and a criminal defendant—may obtain testimony from Gleason and Baig either through depositions or at trial. In either posture, the resulting sworn testimony would constitute a prior statement of a likely Government witness, and the Criminal Defendants would gain access to a detailed preview of the witnesses' anticipated testimony, their demeanor, and their responses to cross-examination—none of which would be available under the criminal discovery rules.[7] The Jencks Act provides that prior statements of Government witnesses "shall not be the subject of . . . discovery" until the witness "has testified on

_____

[7] *See SEC v. Nicholas*, 569 F. Supp. 2d at 1071–72 (the criminal discovery rules "are purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witness[es] from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment"); *SEC v. Downe*, 1993 WL 22126, at \*12 ("[a] stay of discovery is often necessary where liberal discovery rules will allow a litigant to undermine, or gain an unfair advantage in, a potential criminal prosecution").

direct examination" at trial. 18 U.S.C. § 3500(a). This restriction exists to prevent criminal defendants from obtaining witness statements that could be used to prepare impeachment material or tailor their defenses. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (the Jencks Act "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"). A civil deposition or trial testimony from Gleason or Baig—on any topic related to the Criminal Case—would generate exactly the kind of prior statement the Jencks Act withholds from criminal defendants until trial. Allowing the depositions to proceed would effectively nullify these protections with respect to two of the Government's most important witnesses.

The risk is not hypothetical. Bilzerian's control over Ignite is central to the Criminal Case and directly relevant to his interest in these depositions. The risk is not hypothetical. The First Superseding Indictment alleges that Bilzerian "exercised de facto control at defendant IGNITE," overseeing "operations, strategy, marketing, and fundraising" and "holding daily management meetings," and that he was "the de facto head and beneficial owner" of Ignite. (First Superseding Indictment ¶¶ 3(c)–(d).) When Ignite—a criminal defendant allegedly controlled by Bilzerian—drives civil proceedings to obtain the testimony of the Government's key witnesses before the criminal trial, that is not ordinary civil litigation. Bilzerian has confirmed as much: at the Rule 26(f) conference in the SEC Case, he stated that deposing Gleason was one of his "primary goals in pursuing discovery." (SEC Case Dkt. 112 at 5–6.) The Court need not "be unimaginably naïve to suppose" that Ignite is not acting as a "stalking horse" for the Criminal Defendants. *SEC v. Doody*, 186 F. Supp. 2d 379, 381–82 (S.D.N.Y. 2002).

Although Ignite's breach of contract claims were resolved against the Higher Connection entities, the veil-piercing depositions will cover much of the same factual terrain. To pierce the corporate veil, Ignite must prove not only unity of control between Gleason and Baig and the HC entities, but also that Gleason and Baig personally directed the conduct that gave rise to the underlying liability — and that observing the corporate

form would sanction an injustice. *See Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 38 (1991). That requires questioning Gleason and Baig about how they managed the inventory, what they did with the proceeds, and whether they used the Higher Connection entities to misappropriate Ignite's assets for personal benefit—overlapping with the inventory management questions at issue in the criminal trial. To satisfy *Gatecliff*'s second prong, Ignite likely will seek to establish that Gleason and Baig used the Higher Connection entities to steal Ignite's inventory, fail to remit payment for products Higher Connection purchased as a distributor, and divert the proceeds for personal use. Proving that theory requires testimony about how inventory moved between the third-party logistics and distributor sides of Higher Connection's business—the identical factual question at the center of the Criminal Case, which charges that Ignite fraudulently booked third-party logistics inventory as distributor sales.

The parties' agreement not to question Gleason and Baig about "pending criminal matters" (Dkt. 141) does not solve the problem. The overlap arises not from questions *about* the Criminal Case, but from the fact that the same underlying transactions are at issue in both proceedings. It is not possible to conduct a meaningful deposition on the veil-piercing claim without eliciting testimony that overlaps with the criminal charges. Nor would a partial stay limited to discovery be adequate: the agreement covers only depositions, and if the case proceeds to trial, nothing would prevent Ignite from calling Gleason and Baig as witnesses and eliciting the same testimony in open court.[8] Courts have repeatedly held that agreements or protective orders limiting the scope of civil discovery are not adequate substitutes for a stay. *See SEC v. Nicholas*, 569 F. Supp. 2d at 1072–73 ("[a]ny limitation placed on civil discovery short of a stay would be difficult to enforce and easily circumvented"); *Huerta v. County of Tulare*, 2019 WL 1367803, at *6–8 (E.D. Cal. Mar. 26, 2019) (granting stay after protective order proved inadequate). The Government's interest weighs strongly in favor of a stay.

_____

[8] A full stay would defer this case only until the conclusion of the criminal trial, which is set for October 19, 2026.

4.    <u>The Public Interest Weighs Strongly in Favor of the Requested Stay</u>

The public interest in the criminal investigation "overlaps substantially" with the Government's interest in protecting its criminal investigation and is thus another significant factor weighing in favor of a stay. *Christian Stanley,* 2012 WL 13009158, at *6. As a general matter, the Ninth Circuit gives "substantial weight" to the "public interest in law enforcement" when balancing against the public interest in prompt resolution of civil claims. *Bureerong,* 167 F.R.D. at 87 (quoting *Campbell,* 307 F.2d at 487). In addition, courts recognize the public interest in ensuring that the "integrity and truth-seeking function of the criminal [discovery] process" is not subverted. *Nicholas,* 569 F. Supp. 2d at 1072.

//

//

## V.   CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court: (1) grant its motion to intervene; (2) stay all proceedings in this case, including the depositions of Gleason and Baig currently noticed for April 17, 2026, pending the conclusion of the Criminal Case; and (3) on an emergency or expedited basis, enter an interim order staying the April 17, 2026 depositions pending the Court's resolution of this Motion. The Government further requests leave to seek extensions of the stay as necessary. The Government respectfully proposes that plaintiff file any opposition within seven days, and that the Government file any reply within five days thereafter, so that the Court may resolve this Motion in advance of the May 5, 2026 status and trial-setting conference (Dkt. 140).

Dated: April 10, 2026

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

IAN V. YANNIELLO
Chief, National Security Division

   /s/ David C. Lachman
DAVID C. LACHMAN
Assistant United States Attorney

Attorneys for Intervenor
UNITED STATES OF AMERICA

16

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 10, 2026, I electronically transmitted the within and foregoing **MOTION TO INTERVENE, TO STAY PROCEEDINGS, AND TO HOLD STATUS HEARING ON OR BEFORE APRIL 16, 2026**, together with the accompanying declaration, exhibits, and proposed order, to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants listed as counsel in this case.

<u>    /s/  *David C. Lachman*   </u>
DAVID C. LACHMAN
Assistant United States Attorney

Attorneys for Intervenor
UNITED STATES OF AMERICA

17