**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ignite International Limited,<br><br>                    Plaintiff,<br><br>v.<br><br>Higher Connection LLC, et al.,<br><br>                    Defendants. | No. CV-21-02184-PHX-MTL<br><br>**ORDER** |

Once described as a "simple accounting dispute," this action has been anything but simple. With a winding procedural history, this case has been up to the Ninth Circuit Court of Appeals and is now back before this Court on remand of the single remaining claim of piercing the corporate veil brought by Plaintiff Ignite International Limited ("Ignite") against Defendants Zachariah Gleason and Mirza Baig (collectively, "Defendants").

Ignite requested—and the Court granted—a limited reopening of discovery for Ignite to take Defendants' depositions based on the current record. (*See* Doc. 140 at 1.) Because Defendants disclosed to the Court that these depositions could stray into topics at issue in a criminal proceeding in the Central District of California, the Court ordered the parties to meet and confer and submit a joint report "addressing the parameters for the depositions . . . [and] whether and to what extent judicial supervision of Defendants' depositions [was] needed." (*Id.*) The parties thereafter agreed that "[n]either party [would] be permitted to question [Defendants] regarding any pending criminal matters involving [Defendants], Ignite, and/or Ignite's owners, representatives, or managers." (Doc. 141 at

2.)

Then, one week before Defendants' depositions were scheduled to take place, the United States filed a motion to intervene in this action, requesting that the Court stay these proceedings in light of the pending criminal proceedings. (Doc. 149.) At a status conference concerning the government's motion, the Court imposed a protective order precluding Defendants' depositions until further order of the Court and set a hearing on the government's motion. (*See* Doc. 154.)

The government's motion is now fully briefed. Ignite opposes the government's motion, and Defendants have filed a notice of non-opposition. (*See* Docs. 151, 155.) For the following reasons, the Court will grant the government's motion to intervene and will grant its request to stay proceedings.

**I.**

Although Ignite initially did not oppose the government's intervention (Doc. 149 at 2), it has since challenged whether the government is entitled to or may intervene (*see* Doc. 155 at 5-7). The Court need not address whether the government is entitled to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a), because the Court will in its discretion permit the government to intervene pursuant to Rule 24(b).

Rule 24(b) provides courts with discretionary authority to permit intervention to anyone who, in relevant part, "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "[A] district court has discretion to permit intervention when the movant presents (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022) (quotation marks omitted). If these requirements are met, courts may consider other factors including

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, . . . its probable relation to the merits of the case[,] . . . whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will

> significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Id.* (citation omitted). "The district court's discretion under Rule 24(b), to grant or deny an application for permissive intervention includes discretion to limit intervention to particular issues." *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) (citation modified).

The Court begins with the understanding that "[i]t is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway that involves common questions of law or fact." *Bureerong v. Uvawas*, 167 F.R.D. 83, 86 (C.D. Cal. 1996) (citation omitted); *see also SEC v. FAT Brands Inc.*, No. 2:24-cv-03913-MCS-AGR, 2024 WL 5319127, at *3 (C.D. Cal. Dec. 13, 2024) (collecting cases); *S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1068 (C.D. Cal. 2008) ("[N]umerous courts have allowed the United States government to intervene in a civil case for the purpose of moving to stay discovery and other proceedings until the resolution of a related criminal case."); *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992) ("As a rule, district courts in this Circuit have allowed the government to intervene in civil actions—especially when the government wishes [to] do so for the limited purpose of moving to stay discovery."). This is because the government has "a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *S.E.C. v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) (per curiam). The factors required for Rule 24(b) have also been satisfied, so the Court will grant the government's motion to intervene.

**A.**

The Ninth Circuit has held that "an independent jurisdictional basis is not required [if] intervenors do not seek to litigate a claim on the merits" or "rule on additional claims or seek to become parties to the action," but instead to "ask the court only to exercise that

power which it already has." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). Here, the government does not seek to become a party to this action or to litigate any claim on the merits, but instead to request the Court to exercise the power it already maintains to stay proceedings. (*See* Doc. 149 at 9-15); *O'Connell v. Smith*, No. CV-13-01905-MWF (PJWx), 2014 WL 12773900, at *2 (C.D. Cal. Aug. 18, 2014) ("[T]he D.A.'s Office does not seek to become parties to or bring additional claims in this case, but only asks this Court to stay discovery into the pending criminal investigation. The Court's power to stay discovery is power it inherently has. Therefore, no independent jurisdictional basis is required for the D.A.'s Office to intervene." (citation omitted)).

Courts in this Circuit have held that the requirement for an independent ground for jurisdiction is either satisfied by the government's presence as the movant or is not required due to the limited nature of the government's purpose for intervening to stay civil proceedings pending resolution of criminal proceedings. *Compare Bureerong*, 167 F.R.D. at 86 n.6 ("[T]he United States government obviously has an independent jurisdictional ground for intervention." (citing 28 U.S.C. § 1345)), *with SEC v. Dickerson*, No. 2:24-cv-02379-JAM-SCR, 2024 WL 4712358, at *2 (E.D. Cal. Nov. 7, 2024) (citing § 1345 but also reasoning that "no independent jurisdictional grounds are required because the United States does not seek to litigate any claim in the . . . Civil Case on the merits but rather seeks intervention for a limited purpose of moving for a stay pending resolution in the Criminal Case"). The government has therefore either satisfied this requirement or satisfaction of this requirement is unnecessary.

## B.

In the Ninth Circuit, "timeliness for an intervention motion is generally governed by three factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Brown v. Google LLC*, 172 F.4th 1128, 1133 (9th Cir. 2026) (quotation marks omitted). Each of these factors is assessed "by reference to the crucial date when proposed intervenors should have been aware that their interests would not be adequately protected by the existing

parties." *Id.* (citation omitted). The requirement that a proposed intervenor's motion be timely "seeks to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Id.* (quotation marks omitted). Courts thus "do not require hasty intervention." *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 823 (9th Cir. 2021). The most important factor is prejudice to the other parties. *Brown*, 172 F.4th at 1134. Ultimately, though, "timeliness is to be determined from all the circumstances, and the point to which a suit has progressed is not solely dispositive." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279 (2022) (citation modified).

**1.**

Courts "apply a nuanced, pragmatic approach to determine whether the intervention occurred at an appropriate stage of the case." *Brown*, 172 F.4th at 1138 (quotation marks omitted). "In this inquiry, substance prevails over form: Neither the formal stage of the litigation . . . nor the length of time that has passed since a suit was filed is dispositive." *Kalbers*, 22 F.4th at 826 (quotation marks omitted). "[T]he mere lapse of time, without more, is not necessarily a bar to intervention." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 836 (9th Cir. 2022) (citation omitted). "This is especially true where . . . a change of circumstances occurs, and that change is the major reason for the motion to intervene." *Kalbers*, 22 F.4th at 827 (quotation marks omitted). In such instances, "the stage of proceedings factor should be analyzed by reference to the change in circumstances, and not the commencement of the litigation." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016).

Ignite argues that the government's motion is untimely because it "comes after almost five (5) years of litigation, a stipulated judgment, a Ninth Circuit reversal and remand, and a court-ordered reopening of discovery with agreed-upon deposition parameters." (Doc. 155 at 6-7.) Ignite correctly summarizes the procedural history, but that alone is not dispositive as to whether the motion is timely. *See W. Watersheds*, 22 F.4th at 836; *Kalbers*, 22 F.4th at 826. Rather, it is the last listed development—the reopening of discovery to take Defendants' depositions—that constitutes the "change of circumstances"

prompting the government's request to intervene, so the Court assesses whether the government timely moved from that point. *Kalbers*, 22 F.4th at 827. That the government is not seeking to undo all the previous litigation, but instead to stay proceedings of what remains, weighs in favor of finding the government's motion timely. *See Smith*, 830 F.3d at 856-57 (finding this factor weighed in favor of intervention where the movants were "not seeking to reopen decades of litigation").

**2.**

Prejudice "flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more difficult." *Brown*, 172 F.4th at 1134 (citation omitted). In other words, any finding of prejudice must be tethered to the "prejudice which was caused by [the movant's] delay." *Smith*, 830 F.3d at 857-58. "[A] party is put on notice when its interests *might* be adversely affected by the outcome of the litigation." *Brown*, 172 F.4th at 1135 (quotation marks omitted). "[E]very motion to intervene will complicate or delay a case to some degree" but this "is not a sufficient reason to deny intervention." *Kalbers*, 22 F.4th at 825.

Ignite argues that it will be prejudiced because it has "waited years for resolution of its veil-piercing claim, and the parties [had] agreed to a narrow discovery window that was to close on April 21, 2026." (Doc. 155 at 7.) So, "[i]ntervention and a stay would eliminate that timeline and subject Ignite to indefinite delay pending a criminal case in another jurisdiction." (*Id.*) Ignite also argues that the "criminal matter has been pending since 2024," yet the government waited "until mere days before the scheduled depositions" to file its motion. (*Id.*)

The Court finds that Ignite would not be prejudiced by the government's delay in moving to intervene. First, that the criminal matter has been pending since 2024 is irrelevant because the government would not have known that its interests were not being adequately represented in 2024 with regard to sworn statements being taken of likely government witnesses concerning matters overlapping with the criminal proceedings. Fact

discovery closed in this action in November 2022, Defendants' motion for summary judgment was filed in May 2023, and the Court granted Defendants' motion for summary judgment in December 2023. (Docs. 31, 56, 67.) Later, in June 2024, the remaining parties filed—and the Court granted—a stipulated judgment, in which the Court's order granting summary judgment to Defendants was deemed final. (Docs. 81, 82.) This action has been on appeal and in post-judgment proceedings since then. (*See, e.g.*, Docs. 83, 97, 109, 110, 113, 116.) A Grand Jury returned the indictment in the criminal case in September 2024 (Doc. 159-1 at 1), long after Defendants were dismissed from the action as individual parties. As discussed above, the relevant time period from which the Court will assess timeliness and prejudice is, at earliest, from when the Court reopened discovery on February 18, 2026. (Doc. 140.)

Second, Ignite was not prejudiced by the delay from when the Court reopened discovery on February 18, 2026 to when the government moved to intervene and stay proceedings on April 10, 2026. (*Compare* Doc. 140, *with* Doc. 149.) This time period amounted to 52 days, or approximately seven weeks. Although Ignite noticed the depositions within that time frame, Ignite does not allege that it suffered "additional costs or other prejudice" in that period alone. *See Smith*, 830 F.3d at 859, 862 (finding this factor weighed in favor of intervention where there was no evidence of "additional costs or other prejudice suffered between August 2013 and October 2013," the length of delay in moving to intervene). Moreover, the government states that it moved to intervene on April 10, 2026 after learning of the noticed depositions on April 8, 2026. (*See* Doc. 159-1 at 2.)

At bottom, Ignite's asserted prejudice is simply that intervention would delay resolving this action. Even setting aside that much of this claimed prejudice flows from the government's request for a stay, not from the motion to intervene, delay alone is not a sufficient reason to deny intervention. *Kalbers*, 22 F.4th at 825. The Court therefore finds that this factor weighs in favor of finding that the motion was timely.

**3.**

"Delay is measured from the date the proposed intervenor should have been aware

that its interests would no longer be protected adequately by the parties, *not the date it learned of the litigation.*" *Brown*, 172 F.4th at 1137 (citation omitted). "A party seeking to intervene must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." *Id.* (citation omitted). "While the time elapsed is not determinative, the court must weigh the related circumstances of the period of delay." *Id.* (quotation marks omitted).

As explained above, the earliest relevant date from which delay could be assessed is the Court's February 18, 2026 order reopening discovery. *See id.* The government filed its motion to intervene 52 days later, and only two days after it learned of the noticed depositions. Under these circumstances, the Court finds that the delay was not so significant as to render its motion untimely. *See W. Watersheds*, 22 F.4th at 840 (reasoning district court abused its discretion in finding motion to intervene untimely where the "motion came just three months after [the movant] discovered that its leases were involved in [the] litigation"); *Smith*, 830 F.3d at 861-62 (finding motion to intervene timely for "delays of 71 and 79 days, respectively" in light of the circumstances).

On balance, the Court finds that the government's motion was timely.

## C.

"The existence of a 'common question' is liberally construed." *Bureerong*, 167 F.R.D. at 85. Here, the government argues that the criminal case and this case "arise from the same fulfillment agreement, the same warehouse, and the same inventory." (Doc. 149 at 8.) The superseding indictment supports the existence of a common question when liberally construed. Count Two alleges the defendants—one of which is Ignite's corporate parent—(1) contracted with a Phoenix-based company (which the government confirmed is Defendant Higher Connection LLC) to store products in Higher Connection's warehouse and (2) either Higher Connection would package and ship products to a customer when notified by Ignite's parent or would submit a purchase order to Ignite's parent in its role as a distributor, resulting in inflated sales that were then included in a press release and caused Ignite's parent's share price to increase. (Doc. 149-3 at 4, 11-12.) Then, when Higher

- 8 -

Connection refused to certify to an auditor that it purchased unsold inventory that was included in the press release, one of the criminal defendants sold the inventory to an affiliated entity. (*Id.* at 13.)

The allegations still at issue in this case, meanwhile, concern whether the corporate form should be disregarded so Defendants' personal assets can be used to satisfy judgments obtained by Ignite. (*See* Doc. 1 at 12.) Although at surface level these allegations might seem separate and distinct, the Court cannot conclude that there will be absolutely no overlap in any deposition or trial testimony on this remaining claim, particularly concerning (1) background testimony, (2) other testimony that establishes foundation for evidence concerning observance of the corporate form, (3) the source of funds received by Defendants that Ignite argues are sufficient to pierce the corporate veil, (4) Defendants' role in the alleged scheme to steal Ignite's products, (5) whether the corporate form was used for non-legitimate corporate purposes, (6) whether observance of the corporate form would sanction the fraud of theft of Ignite's products, and (7) whether Defendants can be held liable for their role in an alleged agreement to distribute Ignite products. (*See* Doc. 57 at 2 (arguing in response to Defendants' motion for summary judgment that Higher Connection "entered into a Fulfillment Agreement with Ignite to be a warehouse and shipping provider" and a "customer and distributor for Ignite," after which the defendants "stole Ignite property" and "distributed some of the illicit funds to Gleason and Baig under W-2s and 1099s" through transfers to Defendants' "personal online crypto currency accounts during the time period [defendants] were stealing Ignite's products"); *id.* at 2-3 (arguing that Gleason was Vice President of Distribution for Ignite "during the time he was stealing Ignite's products," so his "participation (along with his partner Baig) in the theft of Ignite's products cannot be shielded because [they] were also members of [Higher Connection]"); *id.* at 8 ("It is clear, or at least a disputed fact, that [Higher Connection] was in reality an alter ego of Baig and Gleason, who used the stolen funds from Ignite to finance speculative investing in crypto currency and/or to pay their personal expenses," which had "absolutely no relation to [Higher Connection's] business purpose of providing

warehousing services in Arizona."); *id.* at 9 ("[Higher Connection] (through Baig and Gleason) callously used its relationship as a warehouse and shipping provider, as well as a distributor, of Ignite products to steal from and disrupt Ignite's business."); *id.* at 9-10 (arguing that Defendants could be personally liable even as non-parties to the Fulfillment Agreement because "[Higher Connection] (through Baig and Gleason) also had a side business wherein it acted as a distributor of Ignite products"); *see also* Doc. 156 at 6-7.)

The Court therefore finds that there exists a common question of fact between the sole remaining claim in this action and charges in the criminal case.

### D.

Having determined that the requirements of Rule 24(b) have been met, the Court analyzes additional factors, including

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, . . . its probable relation to the merits of the case[,] . . . whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Callahan*, 42 F.4th at 1022 (citation omitted).

The Court finds that the government's interest in seeking to intervene is significant and that its interest is not adequately represented by other parties. *See Chestman*, 861 F.2d at 50; *Bureerong*, 167 F.R.D. at 86 ("In this case, the Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties. . . . Clearly, neither the Plaintiffs nor the Defendants have this identical interest."). Courts have found that permitting the government to intervene to seek a stay of discovery pending resolution of criminal proceedings will not unduly prejudice the parties to the action or delay the action. *See Dickerson*, 2024 WL 4712358, at *2; *SEC v. Christian Stanley, Inc.*, No. CV 11-7147 GHK (MANx), 2012 WL 13009158, at *4 (C.D. Cal. Sep. 6, 2012) ("Where a party seeks to intervene solely for the purpose of requesting a stay in the proceedings, the

prejudice of intervention on the original parties is minimal. The only consequence of such intervention is that it allows [the court] to entertain the motion to stay, which neither unduly delays the proceeding nor imposes unfair prejudice on the parties." (citation omitted)). As another court found, "any undue delay or perceived prejudice does not flow from the intervention, but from the proposed stay." *O'Connell*, 2014 WL 12773900, at *2; *see also Nicholas*, 569 F. Supp. 2d at 1068 (same). And although the arguments the government intends to offer in intervention may not "significantly contribute to full development of the underlying factual issues in the suit [or] to the just and equitable adjudication of the legal questions presented," *Callahan*, 42 F.4th at 1022 (citation omitted), this does not persuade the Court to deny intervention in light of the government's significant interest in preventing interference with criminal proceedings and in light of the lack of prejudice to the parties. The Court therefore finds that the parties would not be unduly prejudiced and this action would not be unduly delayed by permitting the government to intervene to seek a stay.

Under the circumstances, the Court will in its discretion permit the government to intervene for the limited purpose of seeking to stay proceedings pending resolution of the criminal proceedings.

**E.**

Rule 24(c) also requires that any motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). The Ninth Circuit has held that intervention motions not accompanied by a pleading are proper "where the court was otherwise apprised of the grounds for the motion." *Beckman Indus.*, 966 F.2d at 474. "Thus, where . . . the movant describes the basis for intervention with sufficient specificity to allow the district court to rule, its failure to submit a pleading is not grounds for reversal." *Id.* at 475. Here, the government has sufficiently described the grounds for its motion and the basis for its intervention, so the Court finds that a pleading under Rule 24(c) is not required.

**II.**

Having decided that the government's motion to intervene should be granted, the

Court must now address whether to grant its motion to stay proceedings in this case, including Defendants' depositions and the trial, pending resolution of the criminal proceedings. "The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). "In the absence of substantial prejudice to the rights of the parties involved, simultaneous parallel civil and criminal proceedings are unobjectionable under [the court's] jurisprudence." *Id.* (citation modified). But the Court may nevertheless "decide in its discretion to stay civil proceedings when the interests of justice seem to require such action." *Id.* (citation modified). This decision "should be made in light of the particular circumstances and competing interests involved in the case." *Id.* (quotation marks omitted). Courts should consider whether any rights would be implicated under the Fifth Amendment, along with the following factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Id.* at 324-25. The government does not contend that any Fifth Amendment rights are implicated (*see* Doc. 149 at 9 n.5), so the Court analyzes *Keating*'s remaining five factors. On balance, the Court finds that a stay is warranted and will grant the government's motion.

**A.**

The government does not argue that Ignite lacks an interest in proceeding expeditiously in resolving its remaining claim, but instead argues that Ignite will not be unduly prejudiced because the "requested stay is for a limited duration—until the conclusion of the Criminal Case, which is set for trial in October 2026." (*See* Doc. 149 at 9-10.) Ignite argues that because this case has been pending for five years, a "stay of indefinite duration would cause concrete prejudice" and that, "[w]ithout piercing the corporate veil, Ignite cannot reach the personal assets of Gleason and Baig to satisfy the

$900,000 judgment against the Higher Connection entities." (Doc. 155 at 8.) Ignite also argues that "[d]elay increases the difficulty of obtaining accurate testimony about 2021 transactions" and "creates additional time during which assets that are the subject of the veil-piercing claim could be transferred or dissipated." (*Id.*)

The Court agrees with Ignite that its interest in proceeding expeditiously and the potential prejudice resulting from delay weighs against a stay. Ignite's interest only weighs slightly against a stay, however, because as the government notes, a stay would not be indefinite. The criminal trial is set for October 2026, which is less than six months from now. A trial has not yet been scheduled in the action before this Court, and in light of the Court's calendar at this time, it is unlikely a trial could commence until months after October 2026, which would presumably carry the same risks of which Ignite complains. The Court also notes that Ignite could seek relief if it learns of attempted asset transfers to avoid a potential judgment, as Ignite indicated to the Court it had considered. *See* Ariz. Rev. Stat. § 44-1004.

Thus, although a stay of proceedings for approximately six months would delay resolution of Ignite's remaining claim, the Court finds that the delay is not so significant that it strongly militates against a stay. *See SEC v. Left*, No. 2:24-cv-06311-SPG-JC, 2025 WL 2684195, at *4 (C.D. Cal. Aug. 19, 2025) (agreeing that the defendants "face[d] some amount of prejudice from a stay" but it would "not [be] inordinate" because the "criminal trial [was] set for . . . approximately seven months from the time of [the] order" and "fading memories are an issue in any stay"); *Dickerson*, 2024 WL 4712358, at *2 (finding that a stay would not "unduly delay the expeditious resolution of the . . . Civil Case" because the "requested stay [was] for a limited duration—until the conclusion of the Criminal Case"); *O'Connell*, 2014 WL 12773900, at *4 (finding that a stay of only 120 days "mitigate[d] the potential prejudice of the delay to Plaintiffs" and noting that "[o]ther courts [had] granted stays of similar durations").

**B.**

Defendants do not oppose a stay of proceedings. (Doc. 151.) To the extent the factor

considering the burden on defendants applies here, *see Christian Stanley*, 2012 WL 13009158, at *4, the factor weighs in favor of a stay.

## C.

"In general, considerations of judicial economy weigh most strongly in favor of staying a civil proceeding or aspects of the civil proceeding when a parallel criminal proceeding is pending at the same time and involves overlapping issues." *Christian Stanley*, 2012 WL 13009158, at *5. Although this factor "normally does not favor granting a stay because the court has an interest in clearing its docket," *Sanrio, Inc. v. Ronnie Home Textile Inc.*, No. 2:14-cv-06369-RSWL (JEMx), 2015 WL 1062035, at *4 (C.D. Cal. Mar. 10, 2015) (quotation marks omitted), the Court finds that the interest in clearing the docket does not override the judicial economy considerations of an ongoing parallel criminal proceeding, particularly where the criminal proceeding is set for trial in a few months. The Court therefore finds that this factor weighs in favor of a stay of proceedings or is neutral.

## D.

The Court analyzes the government's interest and the public's interest together because these interests "overlap[] substantially." *Dickerson*, 2024 WL 4712358, at *4 (citation omitted); *see also Christian Stanley*, 2012 WL 13009158, at *6 (finding the "public interest in the criminal investigation favor[ed] a stay of civil discovery to the same extent that the Government's interest favor[ed] a stay"). As another court has stated, "the interests of the Government in protecting its criminal investigation are clearly the paramount concern here." *Bureerong*, 167 F.R.D. at 87; *see also Christian Stanley*, 2012 WL 13009158, at *6 ("[C]ourts have generally recognized the government's strong interest in preserving the integrity of the criminal proceeding."). "There is a clearcut distinction between private interests in civil litigation and the public interest in a criminal prosecution . . . . [which] requires a government policy determination of priority: which case should be tried first." *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962). "Administrative policy gives priority to the public interest in law enforcement," which "seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against

- 14 -

the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities." *Id.* The Court should therefore "be sensitive to the difference in the rules of discovery in civil and criminal cases," and notably that the "rules governing criminal discovery are far more restrictive." *Id.* Relevant here, criminal proceedings have done "away with any pre-trial discovery of statements of a government witness," and a "litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain [discovery] he would not otherwise be entitled to for use in his criminal suit." *Id.*; *see also Nicholas*, 569 F. Supp. 2d at 1071-72 (citing similar concerns about the difference between civil and criminal discovery rules). The government's interest and the public's interest therefore weigh heavily in favor of a stay. *See In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2018 WL 5785284, at *7 (S.D. Cal. Nov. 5, 2018) ("Because of the liberal discovery rights in civil cases, the government argues that a stay is the only way to protect the criminal proceedings. The Court agrees, and finds this factor weighs in favor of granting a stay." (citation omitted)).

The Court finds that the factors ultimately weigh in favor of granting a stay of proceedings pending resolution of the criminal proceedings, especially considering the substantial weight owed to the interest in maintaining the integrity of parallel criminal proceedings and in not permitting criminal discovery limitations to be circumvented through civil discovery. *See Dickerson*, 2024 WL 4712358, at *3 (finding the "United States' interest [was] compelling and weigh[ed] strongly in favor of a stay" and therefore finding a "stay of discovery until the resolution of the Criminal Case . . . [was] consistent with the relief often granted by courts in similar cases"); *O'Connell*, 2014 WL 12773900, at *4 (concluding that "the public's interest should be given priority over Plaintiffs' interest in [the] case"). The Court notes that the Southern District of New York came to the same conclusion in another parallel civil proceeding. *See SEC v. Ignite Int'l Brands, Ltd.*, No. 24-CV-7331 (VM) (OTW), 2026 WL 1028100, at *2-5 (S.D.N.Y. Apr. 16, 2026). The court reasoned in part that the public's interest "strongly favor[ed] a stay" because of the

"overriding interest in the integrity of criminal proceedings" and to "prevent circumvention of the limitations on discovery in criminal proceedings." *Id.* at \*5 (citation modified). The "public's interest in the integrity of the criminal case" was therefore "more important" than the public's interest in "expeditiously resolving" the SEC's action to "protect investors from fraud." *Id.* The public's interest in protecting the integrity of criminal proceedings therefore weighs even more strongly against a private litigant's expeditious resolution of its civil claim. *See Dickerson*, 2024 WL 4712358, at \*4 ("[T]he Ninth Circuit gives 'substantial weight' to the 'public interest in law enforcement' when balancing against the public interest in prompt resolution of civil claims." (quoting *Bureerong*, 167 F.R.D. at 87)).

For these reasons, the Court will grant the government's motion to stay proceedings pending resolution of the criminal proceedings. That said, the Court will permit Ignite to file a motion to lift the stay if the criminal trial is continued beyond October 2026. The Court will also permit Ignite to continue its efforts to collect on its judgment and its award of attorneys' fees and costs arising out of its motion for sanctions. (*See* Docs. 131, 133.)

**III.**

Accordingly,

**IT IS ORDERED** that the Motion (Doc. 149) is **granted**.

**IT IS FURTHER ORDERED** that the United States is permitted to intervene in this action for the limited purpose of seeking a stay of these proceedings pending resolution of the criminal proceedings.

**IT IS FURTHER ORDERED** that this action is **stayed** pending resolution of the criminal proceedings set for trial in October 2026.

**IT IS FURTHER ORDERED** that, notwithstanding this stay of proceedings, Ignite may continue its efforts to collect on its judgment and its award of attorneys' fees and costs arising out of its motion for sanctions.

. . . .

. . . .

- 16 -

**IT IS FURTHER ORDERED** that the United States must file a status report starting on **June 1, 2026**, and on the first business day of every month thereafter, indicating the status of proceedings and whether the criminal trial is set to proceed as scheduled in October 2026.

**IT IS FINALLY ORDERED** that Ignite may file a motion to lift the stay if the criminal trial is continued beyond October 2026.

Dated this 14th day of May, 2026.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge